Richard OLDROYD, Plaintiff,

v.

ELMIRA SAVINGS BANK, F.S.B., Defendant.

No. 96–CV–6227L.

United States District Court, W.D. New York.

Jan. 29, 1997.

Peter H. Bouman, Coughlin & Gerhart, Binghamton, NY, for plaintiff.

Edward B. Hoffman, Sayles, Evans, Trayton, Palmer & Tifft, Elmira, NY, for defendant.

### DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff Richard Oldroyd ("Oldroyd") brings this action against the Elmira Savings Bank ("ESB" or "the Bank") asserting that he was wrongfully terminated from his employment in violation of 12 U.S.C. § 1831j (the "Depository institution employee protection remedy"), as well as in breach of the employment contract between them. Presently before me is ESB's motion for partial summary judgment and a stay pending arbitration. For the reasons set forth below ESB's motion is granted in part and denied in part.

### BACKGROUND

Oldroyd was employed by ESB from 1985 until his termination in October 1995, at which time his title was Vice President in charge of the Bank's Management Information Systems. Oldroyd claims that in January 1994 he told senior bank officials that the head of the Consumer Loan Department was making improper or illegal loans to himself and his family members. Oldroyd claims that he was told to "leave this information alone."

In April 1994 Oldroyd allegedly gave this information to the United States Department of the Treasury's Office of Thrift Supervision ("OTS"). He subsequently told ESB's President that he had done so.

The OTS commenced an investigation of ESB which eventually resulted in the prosecution and conviction of the head of the Consumer Loan Department for bank fraud. Oldroyd cooperated with the OTS throughout that investigation.

Thereafter, Oldroyd claims that he was subjected to a course of discriminatory conduct by senior bank officials, including what amounted to a demotion as well as unreasonable job demands. The Bank's actions allegedly caused Oldroyd to become ill and unable to work.

On October 20, 1995, the Bank discharged Oldroyd allegedly because it had not received requested information from him concerning his medical condition.

Oldroyd brought this action in May 1996. His first claim is for retaliatory discharge pursuant to 12 U.S.C. § 1831j, which makes it unlawful for a depository institution to discharge or discriminate against an employee because the employee "provided information to any Federal banking agency . . . regarding . . . a possible violation of any law or regulation . . . or . . . an abuse of authority . . . by the depository institution or any director, officer, or employee [thereof]." 12 U.S.C. § 1831j(a). On this claim Oldroyd seeks reinstatement and damages, including punitive damages.

Oldroyd's second cause of action is for breach of his employment contract. On this claim Oldroyd seeks damages, including punitive damages, based upon the Bank's wanton and malicious conduct.

ESB moves for partial summary judgment dismissing those parts of Oldroyd's claims which seek punitive damages, on the grounds that neither 12 U.S.C. § 1831j, nor New York law governing breach of contract, provides for punitive damages as a matter of

law. ESB also seeks a stay of the remaining parts of Oldroyd's claims pending arbitration, based upon the arbitration provision contained in Oldroyd's employment contract with ESB. Oldroyd opposes ESB's motion in its entirety.

## DISCUSSION

### A) *Arbitrability of Oldroyd's Claims*

■ A court deciding a motion to compel arbitration and to stay proceedings should consider four factors: whether there has been an agreement to arbitrate; the scope of that agreement; whether the federal statutory claims, if any, were intended by Congress to be non-arbitrable; and, if only some of the claims are subject to arbitration, whether to stay the remainder of the proceedings pending arbitration. *DiCrisci v. Lyndon Guar. Bank of New York*, 807 F.Supp. 947, 950 (W.D.N.Y.1992) (citing *Creative Securities Corp. v. Bear Stearns & Co.*, 671 F.Supp. 961, 965 (S.D.N.Y.1987), *aff'd*, 847 F.2d 834 (2d Cir.1988)).

■ The arbitrability of the parties' dispute is for the court, not the arbitrator, to decide at the outset. *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986). In determining arbitrability, the court must take into account the strong federal policy favoring enforcement of agreements to arbitrate. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). This policy is intended to prevent "[c]ontracts to arbitrate [from being] avoided by allowing one party to ignore the contract and resort to the courts." *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).

■ So strong is the policy favoring arbitration that enforcement of the agreement "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies, Inc.*, 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). Accordingly, any doubts as to arbitrability should be resolved in favor of arbitration. *Id.; Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985).

■ The court is not to consider the merits of the underlying controversy in deciding whether it should be submitted to arbitration. *AT & T Technologies, Inc.*, 475 U.S. at 649, 106 S.Ct. at 1418–19. The only issues at this stage are whether the parties' agreement to arbitrate encompasses the dispute, and if so, whether the law permits arbitration of the dispute. *Mitsubishi*, 473 U.S. at 628, 105 S.Ct. at 3354–55. If both these questions are answered in the affirmative, the court has no discretion, and must direct the parties to proceed to arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217–18, 105 S.Ct. 1238, 1240–41, 84 L.Ed.2d 158 (1985).

In this case, there is no dispute that the employment contract between the parties contains an arbitration provision. In order to "assure [the] Bank" of Oldroyd's "continued dedication, ... and to induce [Oldroyd] to remain and continue in the employ of Bank" ESB and Oldroyd renewed their pre-existing employment contract in February 1994 by entering into a new, five-year employment agreement. That agreement (the "ESB/Oldroyd Agreement") contains the following provision:

> ARBITRATION: Any dispute, controversy or claim arising under or in connection with this Agreement shall be settled exclusively by arbitration, ... in accordance with the rules of the American Arbitration Association....

Thus, the issues I must decide are whether Oldroyd's claims are arbitrable and, if so, whether they are within the scope of the arbitration provision contained in the ESB/Oldroyd Agreement.

### 1) *Oldroyd's Breach of Contract Claim Is Arbitrable*

■ ESB asserts that Oldroyd's breach of contract claim must be arbitrated in accor-

dance with the arbitration clause contained in the ESB/Oldroyd Agreement. Oldroyd opposes, asserting that this claim is not arbitrable because employment contracts are exempt from the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). Oldroyd points to language contained in the FAA, which states that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Oldroyd asserts that he is a worker engaged in interstate commerce and, thus, exempt from the FAA provisions.

I disagree. As I have held previously on two different occasions, the Section 1 exclusion does not appear to have been intended to embrace all employment contracts. *See Townsend v. Smith Barney Shearson, Inc.,* 906 F.Supp. 153, 158 (W.D.N.Y.1995); and *DiCrisci,* 807 F.Supp. at 952–53. The Court of Appeals for the Second Circuit repeatedly has held that the Section 1 exclusion applies only to employees actually working in the transportation industry. *See Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1069 (2d Cir.1972); *Signal–Stat Corp. v. Local 475, United Elec., Radio & Mach. Workers of Am.,* 235 F.2d 298 (2d Cir.1956), *cert. denied,* 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428 (1957). Thus, because banking is not the transportation industry, I find that Oldroyd's employment contract is not exempt from the provisions of the Federal Arbitration Act based upon the exclusionary language set forth in 9 U.S.C. § 1. *See also Powers v. Fox Television Stations, Inc.,* 923 F.Supp. 21, 24 (S.D.N.Y.1996) (finding that "the § 1 language was not intended to exclude all employment contracts from the FAA's coverage, but only those involving employees working in the transportation industry"); *Maye v. Smith Barney, Inc.,* 897 F.Supp. 100, 105 (same), *leave to appeal denied,* 903 F.Supp. 570 (S.D.N.Y.1995). Oldroyd's breach of contract claim is arbitrable.

### 2) *Oldroyd's Breach of Contract Claim is Within the Scope of the Arbitration Clause*

■ I also find that Oldroyd's breach of contract claim is within the scope of the

arbitration provision in the ESB/Oldroyd Agreement. Clearly, Oldroyd's claim that ESB breached their Agreement is a dispute "arising under or in connection with" that Agreement.

Because Oldroyd's breach of contract claim is arbitrable and within the scope of the arbitration provision at hand, it must be stayed pending its submission to arbitration.

### 3) *Oldroyd's Retaliatory Discharge Claim is Arbitrable*

■ Oldroyd's retaliatory discharge claim is brought pursuant to the "Depository institution employee protection remedy" (12 U.S.C. § 1831j), which was enacted as part of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") in 1989. It is commonly known as a "whistleblower" statute.

■ Oldroyd asserts that Congress did not intend for this claim to be arbitrable. It is Oldroyd's burden to demonstrate the existence of such Congressional intent. *See Maye,* 897 F.Supp. at 109 (citing *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26–27, 111 S.Ct. 1647, 1652–53, 114 L.Ed.2d 26 (1991)).

In support of his assertion Oldroyd cites specific language in the statute, which describes the rights of employees to bring a "complaint" initiating an action and the remedies available to a "district court" if there is a violation. *See* 12 U.S.C. § 1831j(b), (c). These references to federal court litigation, asserts Oldroyd, are evidence that Congress intended such claims be litigated and not arbitrated.

Oldroyd further notes that the House Conference Report for FIRREA expressly refers to the ability of district courts to impose Fed.R.Civ.P. Rule 11 sanctions against employees who bring frivolous suits. *See* H.R.Conf.Rep. No. 101–222, at 444 (1989), *reprinted in,* 1989 U.S.C.C.A.N. 432, 483. Arbitrators, notes Oldroyd, do not award Rule 11 sanctions.

Finally, Oldroyd suggests that allowing a retaliatory discharge claim to be arbitrated would defeat the underlying purpose of FIR-

REA because preventing fraud and mismanagement—the goals of FIRREA—are more easily obtained in federal court where the proceedings are public, judges are experienced in applying federal law, discovery is expansive, a jury is available, and judicial review exists.

The differences cited by Oldroyd, however, do not distinguish FIRREA from any other federal statute establishing a private right of action. For instance, federal statutes prohibiting race, gender and age discrimination also contain language describing how individuals may assert discrimination claims in federal court. However, statutory discrimination claims generally are considered arbitrable. *See Gilmer*, 500 U.S. at 35, 111 S.Ct. at 1656–57 (holding ADEA claims arbitrable); *Alford v. Dean Witter Reynolds Inc.*, 939 F.2d 229, 230 (5th Cir.1991) (holding Title VII claims arbitrable); *Maye*, 897 F.Supp. at 109 (same); *Townsend*, 906 F.Supp. at 157, n. 4 (same).

Nor can one say that the goals of FIRREA are uniquely deserving of federal court resolution more than the goals of any other federal statute, like Title VII or the ADEA.

Finally, while FIRREA provides a private right of action for retaliatory discharge, Oldroyd cites no language in the statute or its legislative history that addresses the arbitrability, *vel non*, of such claims.

In short, Oldroyd has not met his burden of proving that "Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652. I find that his retaliatory discharge claim is arbitrable.

### 4) *Oldroyd's Retaliatory Discharge Claim is Not Within the Scope of the Arbitration Clause*

■ While Oldroyd's FIRREA claim is arbitrable, I find that it falls outside the scope of the arbitration provision found in the ESB/Oldroyd Agreement. Unlike the breach of contract claim which is directly rooted in Oldroyd's employment agreement, the retaliatory discharge claim is different. In my view, it does not "arise under or in connection with" the ESB/Oldroyd Agreement. Therefore, I believe that it is not subject to arbitration.

The language in the arbitration clause is crucial. The ESB/Oldroyd Agreement refers to "any dispute, controversy or claim arising under or in connection with this Agreement". This clause relates directly to resolving disputes concerning the written agreement. For that reason, as stated above, I believe that the breach of contract claim is covered by the arbitration agreement.

However, it would be improper to force a party to arbitrate a retaliatory discharge claim unless there was a clear agreement by the parties to submit such a dispute to arbitration. A victim of retaliation should not lose his right to rectify that conduct in federal court absent a clear agreement to do so. In my view, there is no clear agreement by the parties in this case to submit such a dispute to arbitration.

The Ninth Circuit case of *Prudential Ins. Co. of America v. Lai*, 42 F.3d 1299 (9th Cir.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 61, 133 L.Ed.2d 24 (1995) is instructive. The Ninth Circuit vacated an order compelling arbitration because it found that the employees in question had not agreed to submit discrimination claims to arbitration. The Court emphasized the importance of compelling arbitration only relating to those claims that were clearly contemplated by the parties. Plaintiffs "could not have understood that in signing it [U–4 Form, used in securities industry], they were agreeing to arbitrate sexual discrimination suits." *Lai*, 42 F.3d at 1305. "[T]hey did not knowingly contract to forego their statutory remedies in favor of arbitration." *Id.*

To be sure, the result here might be different if the language of the arbitration clause were different. In my view, the arbitration clause is not especially broad. In several other cases where courts ordered arbitration of statutory claims the arbitration clauses were much broader than the clause at issue here.

For example, if the parties had agreed to arbitrate "all disputes" or "all controversies" arising between the parties, then the result

here might be different. *See, e.g., Rojas v. TK Communications, Inc.,* 87 F.3d 745 (5th Cir.1996) (Title VII claim was within scope of agreement to arbitrate "any action contesting the validity of this Agreement ... **or any other disputes**"); *McWilliams v. Logicon, Inc.,* 1996 WL 439291 (D.Kan., July 9, 1996) (ADA claim was within scope of agreement to arbitrate "disputes arising out of the termination of [plaintiff's] employment ..."); *Pitter v. Prudential Life Ins. Co.,* 906 F.Supp. 130 (E.D.N.Y.1995) (Title VII claim was within scope of agreement to arbitrate "any dispute, claim or controversy arising out of or in connection with the business of any member of the [NASD]...."); *DiCrisci,* 807 F.Supp. at 950 (Title VII claim was within the scope of agreement to arbitrate "any dispute between [plaintiff and her employer] or claim by either of them against the other....").

The parties here, however, did not agree to arbitrate "all disputes" or "all controversies." Rather, they agreed to arbitrate only those disputes arising under or in connection with the ESB/Oldroyd Agreement. *See Hoffman v. Aaron Kamhi, Inc.,* 927 F.Supp. 640 (S.D.N.Y.1996) (ADA and FMLA claims were **not** within the scope of agreement to arbitrate disputes "pertaining to the [employer company]" and "arising out of or respecting any matter contained in [the] Agreement or any differences as to the interpretation of any of the provisions of [the] Agreement").

The existence of the ESB/Oldroyd Agreement and the contents of that Agreement have no bearing on Oldroyd's retaliation claim. Even if Oldroyd had no written employment agreement, he would still be able to prosecute a retaliatory discharge claim since such a cause of action is authorized by stat-

ute and arises independent of any contract right.[1] This cannot be said of Oldroyd's breach of contract claim.

I recognize that there are some district court cases that have interpreted arbitration clauses similar to Oldroyd's and have compelled arbitration of discrimination or retaliatory discharge claims. *E.g., Gateson v. ASLK–Bank, N.V./CGER–Banque,* 1995 WL 387720 (S.D.N.Y.1995); *Powers,* 923 F.Supp. at 24; *Mikes v. Strauss,* 889 F.Supp. 746, 755 (S.D.N.Y.1995). I am not persuaded by these cases. In *Mikes* there is virtually no analysis of the issue, and, in *Gateson* and *Powers,* where there is analysis, I disagree with it. *See also Arthur v. Jones,* No. 94–CV–6200L (W.D.N.Y.1995). Especially in the employment context, where the employee has little bargaining power, such expansive interpretation of these arbitration clauses violates standard contract interpretation rules.

In sum, while Oldroyd's retaliatory discharge claim is arbitrable, I find that it does not fall within the scope of the arbitration provision at issue. Accordingly, this claim is not referred to arbitration and may remain in federal court.

### B) *Motion For Partial Summary Judgment*

As noted, ESB also moves to dismiss those parts of Oldroyd's claims seeking punitive damages, on the grounds that such damages are unavailable under both 12 U.S.C. § 1831j and New York contract law.[2] With respect to Oldroyd's breach of contract claim, I decline to resolve this issue and refer it to the arbitrator. As for punitive damages on Oldroyd's retaliatory discharge claim, I deny ESB's motion.

---

1. *Hawaiian Airlines Inc. v. Norris,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) is instructive. There, the Court was deciding whether a state law retaliatory discharge claim was preempted by the Railway Labor Act, which mandates arbitration of "minor" disputes, defined as those involving interpretation of collective bargaining agreements. The Court determined that the retaliatory discharge claim was not preempted because analysis of the circumstances surrounding the employee's discharge was "purely factual." It did not involve interpretation of the collective bargaining agreement. "Wholly apart from any provision of the CBA,

[the employer] had an ... obligation not to fire [the employee] in violation of public policy or in retaliation for whistleblowing." *Id.* at 258, 114 S.Ct. at 2246.

Similarly, in this case, Oldroyd's right to be free from retaliatory discharge is entirely separate from his rights arising under his employment contract.

2. ESB seeks a determination from me on this issue regardless of whether or not the merits of either claim are decided by an arbitrator.

### 1) Availability of Punitive Damages on Oldroyd's Breach of Contract Claim

ESB asserts that under New York law, punitive damages are never available as a remedy for breach of contract, unless the conduct at issue is so egregious as to constitute an independent tort. *See New York University v. Continental Insurance Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995). ESB further asserts that its conduct in the present matter could never meet the high standards required for such finding. *Id.* Accordingly, ESB asserts that I should find as a matter of law that punitive damages are not recoverable on this claim.

Historically under New York law, arbitrators have not had the power to award punitive damages. *See Garrity v. Lyle Stuart Inc.*, 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976). This policy, however, recently was rejected by the New York Supreme Court, Appellate Division, First Department in *Mulder v. Donaldson, Lufkin & Jenrette*, 224 A.D.2d 125, 648 N.Y.S.2d 535 (1st Dep't, 1996). There, relying upon *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), the Appellate Division found that the FAA preempts the so-called *Garrity* rule and that, where the parties have agreed to arbitrate their disputes, and punitive damages are impliedly a potential remedy for those disputes, unless the parties have expressly agreed otherwise the arbitrator must be allowed to make a punitive damages determination. *Mulder*, at 130, 648 N.Y.S.2d at 538 ("Since the parties did not explicitly agree to exclude the award of punitive damages from arbitration, and it is implicit in the agreement that punitive damages are subject to arbitration, we find that the issue of punitive damages should be heard by the arbitrators.").

In this case, the ESB/Oldroyd Agreement is silent as to punitive damages. It simply contemplates that disputes arising out of the Agreement be arbitrated. Because the parties did not expressly determine that punitive damages should **not** be decided by the arbitrator, I find that the arbitrator should determine all aspects of the breach of contract claim—including, if necessary, whether the conduct of defendants merits the award of punitive damages. *See Mulder*, at 130, 648 N.Y.S.2d at 538 ("[W]ith respect to arbitration proceedings governed by the FAA which preempts the *Garrity* rule, the arbitration of punitive damage claims is required except where the parties have unequivocally agreed otherwise."); *see also Mastrobuono*, 514 U.S. at ——, 115 S.Ct. at 1219.

Accordingly, ESB's motion for partial summary judgment as to punitive damages on Oldroyd's breach of contract claim is denied without prejudice. This issue must be decided, in the first instance, together with the merits of the breach of contract claim by the arbitrator.

### 2) Availability of Punitive Damages on Oldroyd's Retaliatory Discharge Claim

I deny on the merits ESB's motion for partial summary judgment striking the claim for punitive damages in connection with Oldroyd's retaliatory discharge claim. I find as a matter of law that punitive damages may be awarded, if the facts warrant such an award, under the terms of 12 U.S.C. § 1831j.

Where a bank is found to have wrongfully discharged an employee in retaliation for "whistle blowing," subsection (c) of 12 U.S.C. § 1831j states that a district court may order the bank

(1) to reinstate the employee to his former position;

(2) to pay compensatory damages; or

(3) take other appropriate actions to remedy any past discrimination.

ESB asserts that because the statute does not expressly provide for punitive damages, Congress intended that none be awarded. Oldroyd asserts that "other appropriate actions" can include punitive damages where the circumstances require. There is no reported case law interpreting whether "other appropriate actions" includes awarding punitive damages.[3]

---

**3.** Only one case touches tangentially on this issue. In *O'Connell v. River Forest Bank*, 1993 WL 276787 (N.D.Ill.1993) the plaintiff asserted that because punitive damages were unavailable un-

The legislative history of FIRREA in general, and Section 1831j in particular, does not provide a definitive answer. FIRREA was enacted in response to the so-called "thrift crisis" of the late 1980's during which financial institutions were failing in record numbers as the result of fraud, mismanagement and inadequate supervision. One of the express purposes of FIRREA was to "strengthen the enforcement powers of federal regulators of financial institutions; and ... to strengthen the penalties for defrauding or otherwise damaging financial institutions...." H.R.Conf.Rep. No. 101–222, at 393 (1989), *reprinted in,* 1989 U.S.C.C.A.N. 432. FIRREA provides for civil and criminal penalties for violating its terms. However, the legislative history does not explain language contained in the "Financial institution employee protection remedy" provision—later codified at 12 U.S.C. § 1831j. It merely repeats it. *See* H.R.Conf.Rep. No. 101–54(I) at 397 (1989), *reprinted in,* 1989 U.S.C.C.A.N. 86, 193 ("[Section 1831j] ... empowers a district court to order reinstatement, compensatory damages, or other appropriate remedies, if the employee was wrongfully discharged.")

Thus, the legislative history only highlights Congress' intent to better protect the public from fraud and mismanagement in the nations' financial institutions by enhancing enforcement of federal banking laws and regulations. It provides no clear indication about the availability of punitive damages for retaliatory discharge.

Because neither the statutory language nor the legislative history provides any definitive indication that punitive damages are **not** permissible under Section 1831j, I find that "other appropriate actions" may include punitive damages.

I am guided by *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). There the Supreme Court was deciding whether money damages are available on claims brought pursuant to an implied private right of action

under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688. In making this determination, the Court stated "[t]he general rule ... is that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Id.* at 70–71, 112 S.Ct. at 1035. Because Congress had made no relevant changes to Title IX subsequent to the case establishing a private right of action thereunder, the Supreme Court concluded that money damages were an appropriate form of relief. "[W]e presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise." *Id.* at 66, 112 S.Ct. at 1032.

This reasoning was relied upon by the United States Court of Appeals for the First Circuit in a case similar to this one, involving a "whistleblower" provision. In *Reich v. Cambridgeport Air Systems, Inc.,* 26 F.3d 1187 (1st Cir.1994), the Court was deciding whether money damages, including punitive damages, were available on a retaliatory discharge claim brought under OSHA. There, the relevant statutory language stated that district courts had jurisdiction to "order **all appropriate relief** including rehiring or reinstatement of the employee to his former position with back pay." *Id.* at 1190.

The Court of Appeals found that "all appropriate relief" could include an award of punitive damages. "We think *Franklin* strongly suggests that 'all appropriate relief' ... embraces monetary damages as well as other relevant forms of relief normally available, Congress having provided no 'clear direction' to the contrary." *Id.* at 1191. "Moreover, given the expansive language in *Franklin* ... it is difficult to exclude even *exemplary* damages where otherwise justified in particular circumstances." *Id.*

The *Reich* Court stated an additional reason for allowing punitive damages on claims for retaliatory discharge brought pursuant to

---

der Section 1831j (and thus the relief was incomplete), he should be permitted to bring a pendant state law claim for retaliatory discharge in addition to his Section 1831j claim. Without discussion, the court impliedly accepted plaintiff's as-

sertion that punitive damages were unavailable under Section 1831j, but rejected his argument and dismissed the state claim. I do not consider this to constitute an analysis of the punitive damages issue.

OSHA: namely, that retaliatory discharge is treated as an intentional tort, and punitive damages generally are available for tort claims.

> Courts have traditionally had the power in tort cases to award damages 'larger than the amount necessary to reimburse actual monetary loss sustained or even anticipated by the plaintiff, and thus redress intangible elements of injury that are 'deemed important, even thought not pecuniary in [their] immediate consequences.', ... And in circumstances where the defendant's misconduct was intentional or reckless, 'punitive or exemplary damages are generally available.'

*Id.* at 1192 (citations omitted).

This reasoning is compelling. I can think of no more appropriate application of punitive damages than to punish and deter the type of behavior of which Oldroyd presently complains. To the extent punitive damages are available on state law tort claims, there is no reason to limit a plaintiff's recovery under such claims just because the action was brought pursuant to federal statute. *See Kedra v. Nazareth Hospital,* 868 F.Supp. 733, 740 (E.D.Pa.1994) (finding that punitive damages are available under the Rehabilitation Act for several reasons, including the fact that claims under § 504 of the Act are compared to tort claims, "in which punitive damages are traditionally available.")

Thus, although Congress did not expressly provide for recovery of punitive damages under 12 U.S.C. § 1831j, I find nothing in the legislative history or statutory language of FIRREA suggesting that Congress intended to limit the remedies available thereunder. Accordingly, I find as a matter of law that "other appropriate remedies" may, in the correct circumstances, include punitive damages. *See DeLeo v. City of Stamford,* 919 F.Supp. 70, 73 (D.Conn.1995) (finding that compensatory and punitive damages are available under Section 504 of the Rehabilitation Act, and noting that "the relevant question is not whether the statute demonstrates Congressional intent to authorize a specific remedy, but whether it demonstrates Congressional intent to limit the traditional presumption in favor of any available remedy.");

*see also Garrett v. Chicago School Reform Board of Trustees,* 1996 WL 411319, *3 (N.D.Ill. July 19, 1996) (finding that monetary damages are available under the Rehabilitation Act and the ADA, "particularly in light of the Supreme Court's mandate that 'absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action pursuant to a federal statute'"). Accordingly, I deny ESB's motion for partial summary judgment concerning the availability of punitive damages under 12 U.S.C. § 1831j.

### C) *Stay of Nonarbitrable Claim*

Finally, ESB requests that I stay any part of the action which is not referred to arbitration. The decision to stay rests within the sound discretion of the district court. *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 856 (2d Cir.1987). "Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit." *Id.* Here, the arbitrable claim does not predominate the lawsuit and I cannot state at this time that the nonarbitrable claim is of questionable merit. Thus, I decline to stay proceedings on Oldroyd's retaliatory discharge claim during the pendency of any arbitration proceedings on his breach of contract claim.

### *CONCLUSION*

For the reasons set forth above, ESB's motion for partial summary judgment and for a stay (# 5) is granted in part and denied in part. The parties are directed to submit Oldroyd's breach of contract claim to arbitration in accordance with the terms of plaintiff's employment agreement. On that claim, damages including punitive damages will be decided by the arbitrator. Oldroyd's retaliatory discharge claim will not be referred to arbitration but will continue to be prosecuted in this Court in all respects.

IT IS SO ORDERED.