Richard OLDROYD, Plaintiff–Appellee,

v.

ELMIRA SAVINGS BANK, FSB, Defendant–Appellant.

No. 315, Docket 97–7249.

United States Court of Appeals, Second Circuit.

Submitted Oct. 7, 1997.

Decided Jan. 14, 1998.

Peter H. Bouman, Coughlin & Gerhart, L.L.P., Binghamton, NY, for Plaintiff–Appellee.

Edward B. Hoffman, Sayles, Evans, Brayton, Palmer & Tifft, Elmira, NY (James D. Young, Sayles, Evans, Brayton, Palmer & Tifft, Elmira, NY, of counsel), for Defendant–Appellant.

Before: KEARSE, MINER and CABRANES, Circuit Judges.

MINER, Circuit Judge:

Defendant-appellant Elmira Savings Bank, FSB appeals from so much of an order of the United States District Court for the Western District of New York (Larimer, C.J.) as denies a motion to stay proceedings pending arbitration of plaintiff-appellee Richard Oldroyd's retaliatory discharge claim brought pursuant to 12 U.S.C. § 1831j, the whistle-blower protection provision of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183 (1989), and directs that such claim be prosecuted in the district court because it was not within the scope of the arbitration clause contained in Oldroyd's employment contract.

For the reasons that follow, we vacate the portion of the order of the district court subject of this appeal, with instructions that Oldroyd's retaliatory discharge claim promptly proceed to arbitration.

## BACKGROUND

Plaintiff-appellee Richard Oldroyd was hired by defendant-appellant Elmira Savings Bank ("ESB") in 1985. By 1994, Oldroyd had been promoted to the position of vice-president and director of Management Information Systems at ESB. In January of 1994, Oldroyd claims to have informed senior bank officials that Robert Gamer, head of ESB's Consumer Loan Department, had been making a series of illegal loans. Oldroyd claims that he was told to "keep quiet" about this criminal activity. In February of 1994, ESB renewed Oldroyd's written employment contract, which contained the following arbitration clause:

> Any dispute, controversy or claim arising under or in connection with this Agreement shall be settled exclusively by arbitration, conducted before a Panel of three (3) arbitrators in Elmira, New York, in accordance with the rules of the American Arbitration Association then in effect.

Oldroyd alleges that, in April of 1994, he informed the United States Treasury Department's Office of Thrift Supervision ("OTS") about the illegal activities at ESB and that, thereafter, he told ESB's president, Robert Carges, of his contact with OTS. OTS subsequently commenced an investigation that led to Gamer's prosecution and conviction on bank fraud charges.

Oldroyd claims that, because he provided information to OTS, ESB senior management subjected him to a course of discriminatory treatment, including what amounted to a demotion and unreasonable job demands. For example, on June 21, 1995, Michael Hosey, then-Executive Vice–President of ESB, ordered Oldroyd to vacate his office and move to what is alleged to have been a storage area in the building's basement, affording Oldroyd no access to ESB's computer system. Additionally, Oldroyd alleges that Hosey stripped him of his supervisory status and staff. As a result of such treatment by

his superiors, Oldroyd claims that he suffered a nervous breakdown on June 21, 1995, which left him unable to return to work. Oldroyd does not dispute the fact that he did not provide ESB with information concerning his illness, but he alleges that ESB had access to such information through its insurance carrier once Oldroyd filed a worker's compensation claim.

ESB claims that Oldroyd had failed for nearly two years to develop and implement an important Disaster Relief Plan (the "Plan") required by OTS. The Plan was necessary to enable ESB to function in the event that a natural disaster disabled ESB's facilities. ESB further asserts that, because of the potentially serious consequences of its failure to comply with this OTS requirement, it relieved Oldroyd on Wednesday, June 21, 1995, of all of his duties except those relating to the Plan. It is undisputed that Oldroyd did not arrive at work on Monday, June 26, 1995, and that he informed ESB the following day that he was ill and would not be returning to work in the near future. Oldroyd did not return to work at all. ESB alleges, however, that (1) Oldroyd failed to provide any specific information concerning his illness, despite ESB's repeated requests for documentation; (2) ESB informed Oldroyd by letter dated October 10, 1995 that his salary would be discontinued due to the lack of medical documentation corroborating his illness; and (3) Oldroyd's employment accordingly was terminated on or about October 20, 1995 for abandonment of his job.

In May of 1996, Oldroyd brought an action in the United States District Court for the Western District of New York, alleging retaliatory discharge under 12 U.S.C. § 1831j, the whistleblower protection provision of FIRREA. Section 1831j provides, in pertinent part, as follows:

No insured depository institution may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee ... provided information to any Federal Banking agency or to the Attorney General regarding—(A) a possible violation of any law or regulation; or (B) gross mismanagement, a

gross waste of funds, an abuse of authority ... by the depository institution or any director, officer, or employee of the institution.

12 U.S.C. § 1831j. In addition to his claim of retaliatory discharge, Oldroyd also asserted a claim for breach of his employment contract. In August of 1996, ESB moved to stay the federal action pending arbitration of both claims, and for other relief.

In January of 1997, the district court found that the breach of contract claim was both arbitrable and within the scope of the employment contract's arbitration clause. The court also found that, although the retaliatory discharge claim under 12 U.S.C. § 1831j was arbitrable, it was not within the scope of the employment contract's arbitration clause. Accordingly, the district court ordered that the breach of contract claim be arbitrated and that the retaliatory discharge claim proceed in the district court. ESB now appeals from so much of the order as denies arbitration of the retaliatory discharge claim.

## DISCUSSION

The sole issue on appeal is whether the district court erred in refusing to stay the district court proceedings on Oldroyd's retaliatory discharge claim pending arbitration.

The Federal Arbitration Act (the "FAA") creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Any arbitration agreement affecting interstate commerce, such as the one at issue, is subject to the FAA. *Id.; see* 9 U.S.C. §§ 1 & 2. Section 3 of the FAA provides for stays of federal proceedings pending arbitration under appropriate circumstances. *See generally* 9 U.S.C. § 3.

A court asked to stay proceedings pending arbitration must resolve four issues: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those

claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration. *See Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir.1987) (citation omitted). We review a district court's determinations on these issues *de novo*. *Id.* at 846; *see also Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 27 (2d Cir.1995)(*De novo* standard of review is used when reviewing district court's determination of the scope of an arbitration clause); *New York v. Oneida Indian Nation*, 90 F.3d 58, 60 (2d Cir. 1996)("[w]e review *de novo* a district court's determination of the arbitrability of a claim.").

In this case, we need only address the second and third elements. We see no reason to disturb the determination of the district court that there was an agreement by the parties to arbitrate. Indeed, neither party contests the district court's finding that an agreement to arbitrate is contained in Oldroyd's employment contract. Additionally, since the arbitrability of the retaliatory discharge claim is the only claim before us, the fourth element is inapplicable to the instant case.

*I. The Scope of the Agreement to Arbitrate*

ESB argues that the district court erred in finding that Oldroyd's retaliatory discharge claim was outside the scope of the arbitration clause contained in his employment contract. We agree.

■ Where the parties to an arbitration agreement specifically have excepted a certain type of claim from mandatory arbitration, it is the duty of federal courts to enforce such limitations. *Oneida Indian Nation*, 90 F.3d at 62. As the Supreme Court has instructed,

the FAA does not require parties to arbitrate when they have not agreed to do so, . . . nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement. . . . It simply requires courts to enforce privately negotiated agreements

to arbitrate, like other contracts, in accordance with their terms.

*Volt Info. Sciences v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989) (citation omitted).

■ There is a strong federal policy favoring arbitration as an alternative means of dispute resolution. *See David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 248 (2d Cir.1991). In accordance with that policy, we will "construe arbitration clauses as broadly as possible," *Collins & Aikman Prod. Co. v. Building Sys.*, 58 F.3d 16, 19 (2d Cir.1995) (citation and quotation omitted), resolving "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24–25, 103 S.Ct. at 941–42; *see also McMahan Sec. Co. v. Forum Capital Markets L.P.*, 35 F.3d 82, 86 (2d Cir.1994). Moreover, we have held that "the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said *with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute.*" *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir.1997)(emphasis supplied)(quotation and citation omitted).

■ The arbitration clause contained in Oldroyd's employment agreement represents the prototypical broad arbitration provision. *See McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir.1988)(noting the distinction between "broad" clauses that purport to refer to arbitration all disputes arising out of a contract and "narrow" clauses that limit arbitration to specific types of disputes). The clause makes arbitrable "[a]ny dispute, controversy or claim arising under or in connection with [Oldroyd's employment agreement]." We have previously held that this is precisely the kind of broad arbitration clause that justifies a presumption of arbitrability. *See e.g., Collins & Aikman Prod. Co.*, 58 F.3d at 20 (holding that a clause "submitting to arbitration '[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause.") (citation

omitted, alterations in original). Therefore, Oldroyd's retaliatory discharge claim is presumptively within the scope of the arbitration clause contained in Oldroyd's employment agreement.

 Oldroyd has supplied no evidence to rebut this presumption. Rather, he provides only a conclusory allegation that he did not intend for the arbitration clause in his employment agreement to encompass a claim for retaliatory discharge. In his view, "arbitration was to be used only to interpret or enforce particular provisions of the [employment] contract." But Oldroyd provides no basis for such a narrow construction of his agreement to arbitrate. Because we cannot say "with positive assurance" that a claim for retaliatory discharge was not within the scope of the arbitration clause, we cannot say that the presumption in favor of arbitration has been overcome in this case.

 Moreover, even without such a presumption, the contractual language is sufficiently broad to encompass a claim of retaliatory discharge. We find untenable Oldroyd's contention that a claim for retaliatory discharge does not constitute "a claim relating to" the agreement governing the terms and conditions of his employment. "In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco, Inc.*, 815 F.2d at 846. "If the allegations underlying the claims 'touch matters' covered by the parties' [contracts], then those claims must be arbitrated, whatever the legal labels attached to them." *Id.* (quoting *Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624–25 n. 13, 105 S.Ct. 3346, 3352–53 n. 13, 87 L.Ed.2d 444 (1985)).

In alleging retaliatory discharge, Oldroyd asserts that he was unlawfully terminated by his employer because he informed OTS of the illegal loan activity occurring at ESB. Inasmuch as more than half of Oldroyd's employment contract relates to the subject of termination from employment, there can be no doubt that a retaliatory discharge claim touches matters covered by the employment contract. For example, the contract address-

es such matters as what constitutes "cause" for termination, benefits to be provided after termination, notice requirements for termination, termination upon change of control, and related matters. Accordingly, we conclude that since Oldroyd alleges that he was terminated under circumstances giving rise to a retaliatory discharge claim, such claim touched upon matters covered by the employment agreement and therefore is clearly within the scope of the agreement's arbitration clause.

The district court, in finding that Oldroyd's retaliatory discharge claim was beyond the scope of the arbitration clause contained in Oldroyd's employment contract, failed to undertake the broad reading that we have mandated for construing such clauses. In determining that there was "no clear agreement" in the arbitration clause that a retaliatory discharge claim is subject to arbitration under the arbitration clause in this case, *see Oldroyd v. Elmira Savings Bank, F.S.B.*, 956 F.Supp. 393, 398 (W.D.N.Y.1997)("*Oldroyd I* "), the district court also failed to recognize the presumption of arbitrability and Oldroyd's failure to overcome it.

## II. Legislative Intent

 Oldroyd argues that claims under FIRREA's whistleblower protection provision are not arbitrable. Specifically, he contends that arbitration of his 1831j claim is contrary to the intent of Congress. We reject the contention.

 It is well settled that federal statutory claims can be the subject of arbitration, absent a contrary congressional intent. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). In other words, the "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." *Id.* Congress, however, may override the presumption in favor of arbitration by manifesting its intention to do so. *Id.* "If such an intention exists, it will be discoverable in the text of the

[statute], its legislative history, or an 'inherent conflict' between arbitration and the [statute's] underlying purposes." *Gilmer,* 500 U.S. at 26, 111 S.Ct. at 1652. The burden of showing such legislative intent lies with the party opposing arbitration. *Id.; McMahon,* 482 U.S. at 227, 107 S.Ct. at 2337–38 (holding that the party seeking to avoid arbitration has the burden of showing that Congress intended to preclude a waiver of a judicial forum for the federal claims at issue).

Oldroyd cites nothing in the text of FIRREA or its legislative history that explicitly precludes arbitration of claims arising under Section 1831j. To support his contention that Congress intended to prevent parties from arbitrating such claims, Oldroyd cites wording in the Act that relates to federal litigation. For example, § 1831j makes reference to the filing of "a civil action in the appropriate United States district court," burdens of proof and a limitations period. We are not persuaded by this argument.

The fact that portions of the statute contemplate litigation of § 1831j claims does not demonstrate congressional intent to preclude arbitration of such claims. As the district court determined, it would make little sense to use references to limitations periods, burdens of proof and filings in federal district court as a litmus test for determining whether Congress intended to foreclose arbitration. Several other federal statutes, under which claims have been held to be arbitrable by this Circuit and the Supreme Court, contain similar provisions in their enforcement sections. *See, e.g., Gilmer,* 500 U.S. 20, 111 S.Ct. 1647 (holding arbitrable claims pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*); *Bird v. Shearson Lehman/American Express, Inc.,* 926 F.2d 116 (2d Cir.1991)(holding arbitrable claims pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (1988)); *Mitsubishi,* 473 U.S. at 636–37, 105 S.Ct. at 3358–59 (holding arbitrable claims pursuant to the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*).[1]

Oldroyd also cites portions of § 1831j's legislative history in which Congress explained the deletion of certain provisions of the House bill providing for awards of attorneys' fees to defendant financial institutions in cases where employee plaintiffs have filed suit in bad faith. H.R. Conf. Rep. No. 101–222, at 444 (1989), *reprinted in* 1989 U.S.C.A.A.N. 432, 483. The conference report also indicates that the provision was deleted on the expectation that application of Fed.R.Civ.P. 11 would be sufficient to prevent the filing of frivolous suits. *Id.* Like the district court, we are unpersuaded by Oldroyd's contention that Congress intended to preclude arbitration of 1831j claims because arbitrators do not impose Rule 11 sanctions.

Oldroyd also argues that allowing a retaliatory discharge claim to be arbitrated rather than litigated would defeat the purpose behind FIRREA, i.e., combatting fraud in the thrift industry. *See generally,* H. Rep. No. 101–54(I), at 300–303 (1989), *reprinted in* 1989 U.S.C.A.A.N. 86, 96–99. Oldroyd contends that this goal is more easily achieved in federal court where, among other things, the proceedings are public, judges are experienced in applying federal law, and appellate review is available. However, as the district court properly noted, in light of the strong federal policy favoring arbitration, courts have not been persuaded by the existence of these unique features of the federal system in examining the arbitrability of other federal claims. *See Oldroyd I,* 956 F.Supp. at 398.[2] In examining Oldroyd's contention that the purposes of FIRREA will be contravened by

1. The relevant enforcement sections can be found at 29 U.S.C. § 1132 (ERISA), 29 U.S.C. § 626 (ADEA), and 15 U.S.C. §§ 9, 15 (Sherman Antitrust Act).

2. Oldroyd further argues that Section 1 of the Federal Arbitration Act excludes from coverage arbitration clauses contained in employment agreements covering workers engaged in interstate commerce. We have repeatedly held that Section 1's exclusion "for contracts of employment of seamen, railroad employees, or any other class of employees engaged in foreign or interstate commerce," is limited to workers involved in the transportation industries. *See, e.g., Maryland Casualty Co. v. Realty Advisory Bd.,* 107 F.3d 979, 982 (2d Cir.1997). We decline Oldroyd's invitation to reject the holdings of our prior cases on this issue.

the use of arbitration rather than enforcement in federal courts, we find no basis for concluding that FIRREA is distinguishable from the ADEA, ERISA and the Sherman Antitrust Act. Oldroyd simply has failed to demonstrate that Congress, in enacting the whistleblower protection provision at issue in this case, intended to preclude a waiver of a judicial forum for claims arising under that provision.

## CONCLUSION

In sum, we hold that: (1) Oldroyd's claim of retaliatory discharge, pursuant to 12 U.S.C. § 1831j, was within the scope of the broad arbitration clause in Oldroyd's employment agreement; and (2) Oldroyd has not met his burden of showing that Congress, in enacting § 1831j of the Act, intended to preclude arbitration of retaliatory discharge claims brought under that section of the Act. The district court, therefore, erred in denying ESB's motion for a stay of the district court proceedings pending arbitration with respect to Oldroyd's retaliatory discharge claim. Accordingly, we vacate the order of the district court to the extent that it denies arbitration of that claim, with instructions that the parties proceed to arbitration forthwith.