Marsha DARRAH, Plaintiff,

v.

**FRIENDLY ICE CREAM
CORPORATION,**
Defendant.

No. 1:04–CV–396.

United States District Court,
N.D. New York.

Aug. 5, 2004.

Ronald J. Kim, Saratoga Springs, NY, for Plaintiff.

Nixon, Peabody, LLP, John E. Higgins, Albany, NY, for Defendant.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiff Marsha Darrah ("Darrah" or "plaintiff") brings this suit against defendant Friendly Ice Cream Corporation ("Friendly" or "defendant"), alleging retaliation and constructive termination in violation of the Family Medical Leave Act ("FMLA").

Friendly has moved to compel arbitration and dismiss the complaint or stay proceedings, and/or for summary judgment. Plaintiff opposed. Oral argument was heard on July 9, 2004 at Utica, New York. Decision was reserved.

## II. FACTS

The following facts are uncontroverted.

On May 4, 1999, Friendly hired Darrah as an Assistant Manager. In January 2002, she was promoted to standing General Manager. Because of her high-risk pregnancy, she declined a November 2002

promotion to full-time General Manager, asking that she remain an Assistant Manager if and when Friendly located a General Manager who could relieve her of the standing General Manager duties.

On May 27, 2003, Darrah signed an "Employment Dispute Resolution Policy and Contract to Arbitrate for Present Employees" ("the Agreement"). Plaintiff signed the Agreement right below where it indicated she understood the contract, had enough time to consider it, had her questions answered to her satisfaction and would be bound by this contract. The Agreement contains a two-step dispute resolution process that commences with an employee's use of an "Open Door Policy" followed by final and binding arbitration. The Agreement indicates that the employee will have to pay the filing fee, while the employer will pay all other administrative costs.

The Agreement states that *"both* of us agree that ... we will settle all claims or disputes about· work ... *exclusively* through the Company Open Door Policy, and *if this procedure fails,* then by final and binding arbitration ...." (Docket No. 6, Attach. 5, Ex. A) (emphasis added). The following paragraph then appears:

> For example, these disputes include claims under any statute or common law, like the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1965, as amended, the Americans with Disabilities Act, the Fair Labor Standards Act, 42 U.S.C. § 1981, as amended, the Employee Polygraph Protection Act, the Employee Retirement Increase Security Act, the National Labor Relations Act, state statutes like them or statutes and common law on work or hiring, the Law of Contract, the Law of Tort, claims for malicious prosecution, wrongful firing, wrongful arrest or imprisonment, intentional or negligent infliction of emotional distress or defamation. *Id.*

FMLA was not included.

The Agreement also provided that Darrah had "21 days to consider it," advised her that she "may want legal advice from an attorney before signing" it, and also that she had the right to "withdraw [her] consent to this Policy and Contract within seven (7) days from the day" she signed it. *Id.* Plaintiff did not withdraw her consent within this time frame. Friendly had the exclusive right to change or end the contract upon giving sixty days notice to the employee.

On July 2, 2003, just over a month after signing the Agreement and just over a week after going into premature labor, Darrah requested and Friendly approved a leave of absence for the high risk birth of her baby. On September 10, 2003, subsequent to the birth of her child, plaintiff returned to work.

Upon returning to work, Darrah alleges that Friendly and/or its employees (1) failed to restore her to her previous position of Assistant Manager, or even an equivalent position; (2) reduced her hours, altered her work schedule, and diminished her work duties and responsibilities; and (3) harassed, embarrassed, and humiliated her in a manner that was intentionally fashioned to cause severe emotional distress.

After Darrah's return to work, co-workers told her that the General Manager, Ken Viazzi ("Viazzi"), had told them that she was demoted from her Assistant Manager position. Another Assistant Manager, in the presence of several co-workers and regular customers, removed and threw away Darrah's name plaque at the front of the restaurant that listed her as an assistant manager. Upset by this situation, on September 17, 2004, plaintiff met with Viazzi and told him that she was "exercising

[her] rights under Friendly's 'Open Door Policy.'" (Docket No. 9, ¶ 27). She requested that "he review [her] post-leave work status and treatment by management." *Id.* Viazzi responded to the request by laughing and stating that she "was being hormonal." *Id.* ¶ 28. Due to Viazzi's failure to respond to her complaints, about a week later she requested a meeting with the District Manager, George Wutkee ("Wutkee"). Wutkee responded that these matters should be exclusively addressed by the General Manager, Viazzi. On October 31, 2003, plaintiff received a telephone call from Viazzi stating that Wutkee "was letting [her] go as an Assistant Manager[,]" which was her pre-FMLA leave position, and that she could continue to work only as a waitress, which position commanded reduced hours and pay. *Id.* ¶¶ 31–32. Darrah claims she was constructively terminated by Friendly's on December 24, 2003.

This action was filed on April 8, 2004, followed by defendant's motion to compel arbitration.

## III. DISCUSSION

### A. Standard for Motion to Compel Arbitration

■ "In the context of motions to compel arbitration brought under the Federal Arbitration Act, 9 U.S.C. § 4 (2000), the court applies a standard similar to that applicable for summary judgment." *Bensadoun v. Jobe–Riat,* 316 F.3d 171, 175 (2d Cir.2003). Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is not genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d.

Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed. R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983).

### B. Federal Arbitration Act ("FAA")

■ The FAA provides that written arbitration agreements "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Where it is demonstrated that a claim should be submitted to arbitration, a court is empowered to stay legal proceedings. *Id.* § 3. There is a strong federal policy in favor of arbitration under the FAA. *See David L. Threlkeld & Co. v. Metallgesellschaft Ltd.,* 923 F.2d 245, 248 (2d Cir.1991). When assessing a motion to compel arbitration, two issues must be resolved: (1) whether the parties agreed to arbitrate, and (2) whether the claims asserted fall within the scope of the arbitration agreement. *Specht v. Netscape Communications Corp.,* 306 F.3d 17, 26 (2d Cir.2002).

### 1. Whether the Parties Agreed to Arbitrate Darrah's Claims

■ Though courts routinely compel parties to arbitrate disputes where a valid agreement exists, it is clear that the FAA only requires arbitration agreements to be enforced "in accordance with their terms." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488

(1989); *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) ("[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties"). Here, the language of the Agreement is clear that the parties agreed to arbitrate only disputes that had not been resolved through the Open Door Policy. The Open Door Policy "must be used before arbitration[,]" which may only be initiated if the Open Door Policy "fails." (Docket No. 6, Attach. 5, Ex. A.) In other words, the parties agreed that engaging in the Open Door Policy is a condition precedent to initiating arbitration.

The term "fails" must be interpreted in light of the Open Door Policy itself. Open Door Policies provide for an interactive dispute resolution process, with an employee calling a matter to the attention of a superior, who then works informally with the employee to resolve the matter. Put another way, in order for the policy to be undertaken, both sides must engage in it. Thus, the term "fails" implies that the policy has begun, that the parties have attempted in good faith to resolve the dispute under the policy, and that, despite their informal best efforts, they have failed to come to an agreement. Otherwise, the Agreement would mandate arbitration in situations where an employee unsuccessfully attempted to engage in the Open Door Policy, rather than where such policy itself, once undertaken, "fails." Therefore, it must be determined whether each side fulfilled its duty to engage in the Open Door Policy.

Friendly claims, in a footnote in its memorandum of law, that "[t]he Complaint is completely silent about any efforts made by [Darrah] to utilize th[e] Open Door Policy prior to the time she claims her employment with Friendly[ ] was constructively terminated in December 2003. Nevertheless, for the purposes of this motion and for purposes of proceeding with this matter in an arbitral forum, Friendly[ ] is willing to assume that this 'open door' step of the process has failed and/or need not be satisfied." (Docket No. 7, p. 3 n. 1.) Initially, it is noted that Friendly is not permitted "to assume" that the Open Door Policy "need not be satisfied" because the parties clearly agreed that only those disputes not resolved through the Open Door Policy would be subject to arbitration. Second, Friendly is not permitted "to assume" that the Open Door Policy failed because, as noted, it is a two-way street and must therefore be engaged in, by both sides, before it can be said to have failed.

Darrah fulfilled her duty to engage in the Open Door Policy. She brought her grievances to Viazzi, explicitly informing him that she was exercising her rights under the Open Door Policy. He dismissively responded that she "was being hormonal." She then requested a meeting with the District Manager, who responded that such disputes were to be exclusively addressed by Viazzi. These facts, if true, demonstrate that plaintiff fulfilled her duty under the Open Door Policy, and that Friendly did not fulfill its duty.

These facts must be accepted as true, because Friendly has failed to deny them in its reply papers. The only treatment given the above facts is a footnote in defendant's memorandum of law that rejects Darrah's argument that defendant anticipatorily repudiated the Agreement by failing to engage in the Open Door Policy. Defendant does not deny that the actual facts are true. Whether the legal mandates of an anticipatory repudiation have been fulfilled is beside the point—the only relevant inquiry is whether the parties intended to arbitrate Darrah's claims. Whether the parties intended to arbitrate Darrah's claims depends upon whether the Open Door Policy failed. Whether the

Open Door Policy failed depends upon whether both sides fulfilled their duties to engage in it. Darrah did so engage; Friendly did not. By refusing to engage in the Open Door Policy, defendant clearly failed to comply with a condition precedent to arbitration under the Agreement. Under such circumstances, there was never an agreement by *both* parties to arbitrate the FMLA claims pending in this forum.

### 2. Whether Darrah's Claims are Covered by the Agreement to Arbitrate

It is worth noting that, even if it is assumed that the Open Door Policy was undertaken by both sides and that it *then* "fail[ed]," whether the claims at issue are covered by the scope of the Agreement is not at all clear. When determining whether a dispute falls within the scope of an arbitration agreement, the arbitration clause at issue should first be classified as broad or narrow. *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir.2001). While a clause providing for arbitration of " 'any dispute, controversy or claim arising under or in connection with [an] [employment agreement]' " is "the prototypical broad arbitration provision," *Oldroyd v. Elmira Sav. Bank. FSB*, 134 F.3d 72, 76 (2d Cir. 1998) (second alteration in original), the Second Circuit has warned more recently that there are "[n]o fixed rules govern[ing] the determination of an arbitration clause's scope," and, "[i]n the end, a court must determine whether, on the one hand, the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause, or if, on the other hand, arbitration is designed to play a more limited role in any future dispute," *Louis Dreyfus*, 252 F.3d at 224.

Just looking at the arbitration clause itself, it could be argued that it is both broad and narrow. For example, while the clause purports to submit to arbitration "all claims or disputes about work," including "claims under any statute or common law," it goes on to list, ostensibly by way of example, no less than seven specific federal statutes and several specific common law causes of action. (Docket No. 6, Attach. 5, Ex. A.) Significantly, it does not list FMLA claims.

Moreover, the clear language of the agreement states that the Open Door Policy is the primary vehicle by which these disputes are to be resolved. *Id.* ("[W]e will settle all claims or disputes about work ... exclusively through the Company Open Door Policy, and if this procedure fails, then by final and binding arbitration"). Arbitration may only be invoked if the Open Door Policy fails. Construing the facts in Darrah's favor, Friendly's failure to engage in the Open Door Policy with respect to her FMLA claims appears to demonstrate that defendant did not believe such claims were covered by the Agreement. Otherwise, it would have made at least *some* attempt to resolve plaintiff's grievance under the Open Door Policy. It would be reasonable to assume that defendant failed to engage in the Open Door Policy in recognition of the fact that the FMLA was not listed, despite virtually every other employment-related federal statute appearing explicitly in the text of the Agreement. However, the reason defendant did not comply with all the terms and conditions of the Agreement need not be resolved. The facts are that it did not; thus it never agreed to arbitrate and cannot now compel plaintiff to arbitrate under the Agreement.

### IV. CONCLUSION

The defendant's motion will be denied in all respects.

Accordingly, it is

ORDERED that

1. Defendant Friendly Ice Cream Corporation's motion to compel arbitration and stay proceedings or dismiss the Complaint is DENIED with prejudice; and

2. Defendant Friendly Ice Cream Corporation's motion for summary judgment is DENIED; and

3. Defendant shall file and serve an Answer to the Complaint on or before August 13, 2004.

IT IS SO ORDERED.