06-4954-cv
Guyden v. Aetna

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: March 28, 2008                                    Decided: October 2, 2008)

Docket No. 06-4954-cv

_____

LINDA C. GUYDEN,

*Plaintiff-Appellant*,

-*v.*-

AETNA INC.,

*Defendant-Appellee.*

_____


BEFORE:  POOLER, HALL, *Circuit Judges*, and GLEESON, *District Judge.*[*]

_____

Based on an arbitration agreement, the district court dismissed Plaintiff-Appellant Linda

Guyden's claim against Defendant-Appellee Aetna, Inc. for terminating her employment in

violation of the whistleblower protection provision of the Sarbanes-Oxley Act.  On appeal,

Guyden argues that SOX whistleblower claims are nonarbitrable, and she further contends that

the procedural limitations imposed by the arbitration agreement will prevent her from vindicating

[*] The Honorable John Gleeson, of the United States District Court for the Eastern District
of New York, sitting by designation.

1

her statutory rights. We hold that claims brought under the Sarbanes-Oxley Act are arbitrable, and we further hold that the specific arbitration process established by the arbitration agreement at issue provides Guyden with an adequate opportunity to enforce her statutory rights. Accordingly, the judgment of the district court is AFFIRMED.

————————————

Eric J. Grannis, New York, N.Y., *for Plaintiff-Appellant*.

Willis J. Goldsmith (Wendy C. Butler, *on the brief*), Jones Day, New York, N.Y., *for Defendant-Appellee*.

Jonathan L. Snare, Acting Solicitor of Labor, Steven J. Mandel, Associate Solicitor, Ellen R. Edmond, Counsel for Whistleblower Programs, Roger W. Wilkinson, Attorney, U.S. Department of Labor, Washington, D.C., *for Amicus Curiae Secretary of Labor.*

————————————

HALL, *Circuit Judge*:

Plaintiff-Appellant Linda Guyden sued Defendant-Appellee Aetna, Inc. for terminating her employment in violation of the whistleblower protection provision of the Sarbanes-Oxley Act. Based on an arbitration clause in an agreement between Guyden and Aetna, the district court dismissed the complaint in favor of arbitration. On appeal, Guyden argues that her whistleblower claim under the Sarbanes-Oxley Act is nonarbitrable because arbitration is inconsistent with the purpose and structure of the Act. She also challenges the specific arbitration procedures established by the arbitration agreement, claiming that the procedural limitations it imposes will prevent her from vindicating her statutory rights. We hold that claims

2

brought under the Sarbanes-Oxley Act are arbitrable, and we further hold that the specific arbitration process established by the arbitration agreement at issue provides Guyden with an adequate opportunity to enforce her statutory rights. Accordingly, the judgment of the district court is AFFIRMED.

## BACKGROUND

### I. Guyden's Relationship with Aetna[1]

In January 2004, Guyden joined Aetna as its Director of Internal Audit. Soon after starting, Guyden alleges that she discovered that Aetna's Internal Audit Department was "ineffective, demoralized, and without independence or objectivity." According to Guyden's complaint, these problems were so serious that she believed that Aetna was in danger of violating the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745 (2002) ("SOX"). SOX, and regulations promulgated thereunder, require corporate officers to report on the effectiveness of internal controls over financial reporting, and they prohibit those officers from characterizing the controls as "effective" if "there are one or more material weaknesses . . .." 17 C.F.R. § 229.308(a)(3). Guyden claims that she reasonably believed that Aetna was at risk of violating this regulation because (1) the Internal Audit Department was ineffective, and (2) that ineffectiveness, if left unaddressed, would become a material weakness in the company's internal controls.

---

[1] Because the district court dismissed Guyden's complaint without addressing its merits, we treat the allegations therein as true. *See State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 (2d Cir. 2007) ("Because the case comes to us after the denial of a motion to dismiss, we accept as true the facts as they are alleged in the amended complaint . . ..").

Guyden responded by attempting to rehabilitate the Internal Audit Department. In need of more resources and greater authority to make changes within the Department, she also brought her concerns to the attention of senior management. During the course of her discussions with senior management about those concerns, Guyden and management clashed over a number of issues, including the possibility of an outside audit and Guyden's efforts to restructure her Department. Over the spring of 2004, Guyden sought assistance from Aetna's Chief Financial Officer, Alan Bennett. Guyden found Bennett's response wanting, and on August 16, 2004, she raised her concerns to Chairman and Chief Executive Officer John ("Jack") Rowe, President Ron Williams, and General Counsel Lou Briskman. About one week after this meeting, Bennett gave Guyden a "withering" performance review, despite having given her a positive review one month earlier.

Guyden eventually prevailed in hiring an outside auditor to review Aetna's internal controls. According to the complaint, senior management prevented the distribution of the outside auditor's report until September 30, 2004, one week after the Audit Committee had held its scheduled meeting. That Committee's next scheduled meeting was to take place on December 2, 2004. Guyden planned to discuss her concerns with the Committee at that meeting, where she also hoped to present the outside auditor's report.

Ten days before the meeting, however, Aetna terminated Guyden's employment. After being terminated, Guyden requested to speak at the Audit Committee meeting about her concerns. Senior management denied that request. Guyden believes that Aetna fired her to prevent her from bringing attention to deficiencies in Aetna's internal controls, and she points to

management's refusal to allow her to speak at the Committee meeting as evidence of its desire to prevent further discussion of her concerns.

## II. Guyden's Lawsuit Against Aetna

### A.     Guyden's Complaint

Within ninety days of Aetna's termination of her employment, Guyden filed an administrative complaint with the Secretary of Labor alleging that Aetna's action had violated the SOX whistleblower protection provision, 18 U.S.C. § 1514A.  Section 1514A prohibits public companies from "discharg[ing] . . . an employee . . . because of any lawful act done by the employee . . . to provide information . . . regarding any conduct which the employee reasonably believes constitutes a violation of [federal securities law], when the information or assistance is provided to . . . a person with supervisory authority over the employee . . .."  18 U.S.C. § 1514A(a)(1)(C).  An aggrieved employee may file an administrative complaint with the Secretary of Labor, and if the Secretary takes no action on the complaint within 180 days, the employee may bring an action in federal district court.  *Id.* § 1514A(b)(1).  When the Secretary did not act on Guyden's administrative complaint within 180 days, she filed this action in the district court.

### B.     Aetna's Motion to Dismiss

Shortly after Guyden filed her complaint, Aetna moved to dismiss the complaint and compel arbitration based on an arbitration agreement that Guyden had signed.  In support, Aetna filed several documents reflecting Guyden's agreement to arbitrate employment-related disputes. For example, Aetna filed Guyden's signed application for employment, which stated that Guyden

understood that if she were "offered employment [at Aetna], a condition of the offer and [her] acceptance [was] that [she] agree[d] to use Aetna's mandatory/binding arbitration program rather than the courts to resolve employment-related legal disputes." Similarly, the offer letter Aetna issued to Guyden stated that "[t]his offer and [Guyden's] acceptance of that offer also are contingent upon [her] agreement to use the Company's mandatory/binding arbitration program rather than the courts to resolve employment-related legal disputes."

Guyden later signed other documents that further delineated the "mandatory/binding arbitration program" applicable to any employment-related disputes. On April 22, 2004, Guyden signed a stock incentive agreement that included a mandatory arbitration agreement ("the Agreement"). The signature page included a statement that "Grantee has accepted the stock option award and agrees to be bound by all its terms and conditions including mandatory binding arbitration of employment related disputes . . .." Guyden does not challenge the existence of the arbitration agreement.

The Agreement stated that "all employment-related legal disputes between [Guyden and Aetna] will be submitted to and resolved by binding arbitration . . .." The only employment-related disputes not included in this requirement were workers' compensation claims, unemployment compensation claims, and Employment Retirement Income Security Act ("ERISA") claims. Disputes over whether the Agreement applied in a particular case were to be submitted to the arbitrator. Arbitration was to be administered by the American Arbitration Association and is subject to its National Rules.

Three components of the arbitration process established by the Agreement are of particular importance to Guyden's challenge: the allowance for limited discovery, the

requirement of confidentiality of the proceedings, and the provision for an abbreviated written decision (the "brief summary" requirement). With respect to discovery, the Agreement allows each party "limited pre-hearing discovery." More specifically, each party "may take the deposition of one person and anyone designated by the other as an expert witness." Each party "also has the right to submit one set of ten written questions (including subparts) to the other party, which must be answered under oath, and to request and obtain all documents on which the other party relies in support of its answers to the written questions." The Agreement further states that "[a]dditional discovery may be permitted by the arbitrator upon a showing that it is necessary for that party to have a fair opportunity to present a claim or defense." Regarding confidentiality, the Agreement provides that "[a]ll proceedings, including the arbitration hearing and decision, [would be] private and confidential . . .." Finally, the "brief summary" provision of the Agreement states that the arbitrator's decision "will be in writing with a brief summary of the arbitrator's opinion."

Guyden fought Aetna's motion to compel arbitration on two grounds. First, she argued that SOX whistleblower claims are categorically nonarbitrable. Second, she claimed that certain components of this specific arbitration process would prevent her from vindicating her statutory rights. The district court rejected both challenges and dismissed the complaint in favor of arbitration. *Guyden v. Aetna Inc.* (*Guyden I*), No. 3:05cv1652 (WWE), 2006 U.S. Dist. LEXIS 73353, at *1 (D. Conn. Sept. 25, 2006). It found no inherent conflict between arbitration and the purposes underlying SOX. *Id.* at *12-13. It also found that because confidentiality is a common aspect of arbitration, the confidentiality clause did not render the arbitration process created by the Agreement unfair. *Id.* at *16. Finally, despite agreeing with Guyden that she might need

7

greater discovery than the Agreement permitted, the district court upheld the Agreement because it found that the arbitrator was free to order additional discovery if it were needed. *Id.* at *18-19.

Guyden appeals.

## DISCUSSION

On appeal, Guyden raises two separate issues. First, she argues that SOX whistleblower claims are categorically nonarbitrable because mandatory arbitration of such claims conflicts with the policy objectives animating the whistleblower protection provision and SOX generally. Second, she claims that the procedural requirements established in the Agreement will prevent her from vindicating her statutory rights.

We review de novo the district court's determination of whether a statutory claim is arbitrable. *Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 76 (2d Cir. 1998).

## I. Arbitrability of SOX Whistleblower Claims

A court determining whether to stay proceedings pending arbitration must resolve four issues:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*Id.* at 75-76. Guyden does not challenge the existence of the arbitration agreement or that it covers most employment-related disputes. Her appeal concerns the third prong: "whether

8

Congress intended [SOX whistleblower] claims to be nonarbitrable." *Id.* She asserts that Congress did so intend.

Under the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA embodies the "liberal federal policy favoring arbitration agreements" and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "This duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987). When statutory claims are involved, a party can prevent enforcement of the arbitration agreement only by showing that "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* at 227. Proof of that intent could "be discoverable in the text of the [statute], its legislative history, or an inherent conflict between arbitration and the [statute's] underlying purposes." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (internal quotation marks omitted).

Guyden urges this Court to find an "inherent conflict" between SOX's underlying purposes and arbitration as a mechanism for resolving related disputes. The premise of Guyden's inherent conflict argument is that the SOX whistleblower provision has a public purpose in addition to its private compensatory function. In Guyden's view, an individual who brings a SOX whistleblower claim is acting as a private attorney general, and the resulting litigation serves as a vehicle for transmitting to the public information about the corporation's fraudulent

9

activity. Her argument thus connects the SOX whistleblower provision with the policies of SOX more generally, the purpose of which is to enforce the accountability and transparency needed for well-functioning capital markets. S. REP. NO. 107-146, at pt. II(E). In other words, Guyden sees her lawsuit against Aetna as having twin objectives: first, to compensate Guyden for her own injuries; and second, "to bring serious auditing and accounting issues to the attention of Defendant's Board of Directors, shareholders, and . . . the investing public." She points out that Aetna has not yet disclosed the accounting irregularities that she claims to have discovered while an employee, and she hopes to use this litigation "to make Defendant's shareholders and the investing public aware of Defendant's internal control problems and its misleading corporate disclosures, as well as its retaliatory termination of Plaintiff."

We dismissed similar arguments in *Oldroyd*, where we held that a retaliatory discharge action brought under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") was arbitrable. *See* 134 F.3d at 78; *see also* Pub. L. No. 101-73, 103 Stat. 183 (1989). There, the plaintiff sued his employer, a bank, for illegally firing him in retaliation for having informed the United States Treasury Department Office of Thrift Supervision about alleged bank fraud. *Id.* at 74. His claim was based on FIRREA's whistleblower protection provision, 12 U.S.C. § 1831j, which prohibits subject banks from discharging an employee in retaliation for the employee having reported possible illegality to federal authorities. *Id.* at 75. The defendant bank sought to compel arbitration based on an arbitration agreement covering all employment disputes. *Id.* The plaintiff objected, arguing that arbitration of his whistleblower claim was "contrary to the intent of Congress." *Id.* at 77. He further claimed that arbitration would defeat FIRREA's purpose of "combatting fraud in the thrift industry," a goal "more easily

10

achieved in federal court where, among other things, the proceedings are public, judges are experienced in applying federal law, and appellate review is available." *Id.* at 78.

This Court disagreed and held that arbitration of the FIRREA whistleblower claim would not interfere with the purposes of the Act. *Id.* at 79. Arbitration remained appropriate, we found, because the "unique features of the federal system" cited by the plaintiff did not overcome "the strong federal policy favoring arbitration . . .." *Id.* at 78. In this regard, FIRREA was "[in]distinguishable from the ADEA, ERISA and the Sherman Antitrust Act," which all created statutory rights that the Supreme Court had found arbitrable. *Id.* at 79.

Our review of the legislative history of the SOX whistleblower provision confirms that the result is the same here. The primary purpose of the statute is to provide a private remedy for the aggrieved employee, not to publicize alleged corporate misconduct. Although Guyden correctly points out that the broad purpose of the Sarbanes-Oxley Act is to strengthen the integrity of capital markets, the whistleblower provision in particular fills a far narrower gap in the law–it protects "employees when they take lawful acts to disclose information or otherwise assist . . . in detecting and stopping actions which they reasonably believe to be fraudulent." S. REP. NO. 107-146, at pt. III. That protection, designed to "make [the] victim whole," takes the form of remedies that include "both reinstatement of the whistleblower, backpay, and compensatory damages . . .." *Id.* Remedies that "make [the] victim whole" protect and compensate whistleblowers, but they do little to publicize the conduct of the corporate defendant. Tellingly, and further undermining Guyden's argument that the public purpose of SOX should preclude arbitration, both Houses of Congress, acting separately, rejected versions of SOX that would have prohibited mandatory arbitration of whistleblower claims. *See* S. 2010, 107th Cong.

§ 1514A(d)(2) (March 12, 2002 version) ("No employee may be compelled to adjudicate his or her rights under this section pursuant to an arbitration agreement."); H.R. 4098, 107th Cong. § 1514A(d)(2) (Apr. 9, 2002 version) (same); S. Rep. No. 107-146, at pt. V (May 6, 2002) (reporting unanimous vote in favor of amendment that "removed the provision dealing with arbitration agreements").

Moreover, a whistleblower need not show that the corporate defendant committed fraud to prevail in her retaliation claim under § 1514A. The statute only requires the employee to prove that she "reasonably believe[d]" that the defendant's conduct violated federal law. 18 U.S.C. § 1514A(a)(1). The provision's focus on the plaintiff's state of mind rather than on the defendant's conduct is inconsistent with what Guyden argues is the statutory purpose—to employ SOX retaliation litigation as a vehicle for publicizing corporate misconduct. It is far more consistent with a statutory purpose to provide a strong compensatory mechanism for employees subjected to adverse employment action as a result of their whistleblowing conduct. This compensatory scheme is entirely consistent with mandatory arbitration, and Guyden's ability to "vindicate [her] statutory cause of action in the arbitral forum" ensures that SOX "will continue to serve both its remedial and deterrent function." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985). We recognize that arbitration is more private than litigation and that Guyden will not have the same opportunity to expose publicly Aetna's alleged wrongdoing. As *Oldroyd* makes clear, however, the loss of a public forum in which to air allegations of fraud does not undermine the statutory purpose of a whistleblower protection provision. 134 F.3d at 78-79.

12

Because we find no inherent conflict between the purpose of the SOX whistleblower protection provision and mandatory arbitration, we hold that such claims are arbitrable.

## II. Enforceability of the Confidentiality, "Brief Summary," and Discovery Provisions

Guyden also objects to three particular aspects of this particular arbitration arrangement. First, she claims that the Agreement's confidentiality clause will prevent other employees from learning about her allegations against Aetna and thereby undermine one of the purposes of the SOX whistleblower protection provision. Second, she attacks the requirement that the arbitrator provide a "brief summary" of his or her decision, arguing that the brevity of the summary will prevent effective review of the arbitrator's decision. Third, she argues that the Agreement does not provide for sufficient discovery.

### A. The Confidentiality Clause

The Agreement includes the following confidentiality clause:

> All proceedings, including the arbitration hearing and decision, are private and confidential, unless otherwise required by law. Arbitration decisions may not be published or publicized without the consent of both the Grantee and the Company.

Guyden argues that this clause conflicts with one of the purposes of the SOX whistleblower provision—to communicate to other employees that their rights will be protected if they report wrongdoing. She believes that if she prevails on her claim, other employees should be able to learn of her success and thereby be reminded of their rights under SOX.

We find some support for Guyden's contention that "in the context of individual statutory claims, a lack of public disclosure may systematically favor companies over individuals." *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1477 (D.C. Cir. 1997). Arbitration of SOX whistleblower claims, like arbitration of any other statutory claims, can be expected to be more private than litigation, and the private nature of the dispute resolution process might reduce whatever incentive the fact of publicity instills in potential whistleblowers.[2]

We agree, however, with the Fifth Circuit's observation that confidentiality clauses are so common in the arbitration context that Guyden's "attack on the confidentiality provision is, in part, an attack on the character of arbitration itself." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 175 (5th Cir. 2004). The Supreme Court has warned against "[s]uch generalized attacks on arbitration," because they "rest on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants" and consequently are "far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." *Gilmer*, 500 U.S. at 30 (internal quotation marks and alterations omitted). Because confidentiality is a paradigmatic aspect of arbitration, our determination that SOX whistleblower claims are arbitrable precludes Guyden's challenge to the privacy of the resulting arbitration.

### B. The "Brief Summary" Provision

---

[2] We assume for the sake of argument that Guyden is correct in claiming that the public litigation of SOX whistleblower claims would create a positive incentive for potential whistleblowers to come forward.

14

The Agreement states that "[u]nless otherwise agreed, the arbitrator's decision will be in writing with a brief summary of the arbitrator's opinion." Guyden argues that this provision will prevent her from obtaining effective judicial review of the arbitrator's decision, as the brevity of the required summary will allow the arbitrator knowingly to ignore the law because "no one would be the wiser."[3]

The Supreme Court addressed a similar claim in *Gilmer*, where the plaintiff challenged arbitration of an Age Discrimination in Employment Act ("ADEA") claim because "arbitrators often will not issue written opinions," a failure that the plaintiff alleged would result "in a lack of public knowledge of employers' discriminatory policies, an inability to obtain effective appellate review, and a stifling of the law's development." *Gilmer*, 500 U.S. at 31. The Court observed that the relevant arbitration rules required "that all arbitration awards be in writing, and that the awards contain the names of the parties, a summary of the issues in controversy, and a description of the award issued." *Id.* at 31-32. Though the Court acknowledged that judicial review of the arbitrator's decision would be "limited," it found that review "sufficient to ensure

_____

[3] Aetna asserts that Guyden is raising this issue for the first time on appeal and that this Court should, therefore, decline to review it. This assertion is wrong. Guyden argued to the district court that obtaining judicial review of any incorrect rulings by the arbitrator would be "even more difficult because arbitrators are not required to make full findings of fact and law." Pl.'s Mem. of Law in Opp'n. to Mot. to Compel Arb. at 9 (Dec. 13, 2005). She further pointed out that "pursuant to Aetna's arbitration instructions, an arbitrator need only make a brief summary of her opinion." *Id.* She feared that "an arbitrator could find against Ms. Guyden even though Aetna violated the law, and no one will be the wiser." *Id.* Although Guyden did not raise this claim in a separate section of her legal memorandum, she clearly identified the provision as problematic for the same reasons she presents on appeal—that it might operate to insulate the arbitrator's decision from later review by requiring only a "brief" description of the basis for the decision.

15

that arbitrators comply with the requirements of the statute . . ..” *Id.* at 32 n.4 (internal quotation marks omitted).

Guyden's challenge fails for similar reasons. The arbitration agreement in *Gilmer* required no more than is required by the instant Agreement. Guyden's attack on the "brief summary" requirement assumes that the arbitrator will knowingly refuse or fail to apply controlling law and then insulate that failure from review through the form of its written decision. She has provided us with no basis for that speculation, and we cannot rely on her fears to find the Agreement unenforceable on this basis. *See Mitsubishi Motors Corp.*, 473 U.S. at 634 (refusing "to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious, and impartial arbitrators"); *cf. Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90-91 (2000) (refusing to invalidate an arbitration agreement based on speculation that the claimant might not be able to vindicate her statutory rights).

### C. Discovery

The arbitration agreement at issue allows for limited discovery:

> The Grantee and the Company shall be entitled to conduct limited pre-hearing discovery. Each may take the deposition of one person and anyone designated by the other as an expert witness . . .. Additional discovery may be permitted by the arbitrator upon a showing that it is necessary for that party to have a fair opportunity to present a claim or defense.

Guyden argues that the discovery permitted by the Agreement is inadequate to allow her to present her claim. According to Guyden, she needs access to third-party discovery, subpoenas,

16

and document production. In response to Aetna's argument that Guyden can apply to the arbitrator for "[a]dditional discovery," Guyden points out that she has limited resources, and therefore will be unable to make the required showing.

Guyden's challenge is to some extent "an attack on the character of arbitration itself," *Iberia Credit Bureau, Inc.*, 379 F.3d at 175, and courts generally treat arguments relating to discovery provisions as "procedural in nature, and therefore left for an arbitrator to resolve," *Kristian v. Comcast Corp.*, 446 F.3d 25, 43 (1st Cir. 2006); *see also CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 855 (7th Cir. 2002). The discovery provision here nevertheless raises serious questions about whether Guyden "effectively may vindicate [her] statutory cause of action in the arbitral forum," *Mitsubishi Motors Corp.*, 473 U.S. at 637. We agree with the district court that "limited discovery comprising one deposition of a fact witness is unlikely to be adequate to advancement of [Guyden's] whistleblowing claim." *Guyden I*, 2006 U.S. Dist. LEXIS 73353, at *18. f the discovery limitations were strictly enforced, the Agreement might well be unenforceable because it would not, under those circumstances, allow Guyden a meaningful opportunity to present her claim.

We need not determine what our decision would be under those circumstances, however, because this Agreement gives the arbitrator the power to order additional discovery upon a showing by Guyden that such discovery is necessary to enable her to present her claim. The FAA also provides the arbitrator with further authority to compel the production of evidence and witnesses at a pre-merits hearing. *Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567, 578-80 (2d Cir. 2005). Guyden thus has both a contractual and a statutory basis for further discovery should it prove necessary for her claim. Although Guyden asserts that she will be unable to make the

17

showing of necessity the arbitrator will require, her challenge assumes that, in violation of her contractual and statutory rights, an arbitrator will deny her needed discovery. Guyden has introduced no evidence that her fears are well-founded, however, and we must enforce the Agreement unless and until the record proves otherwise. *See Green Tree*, 531 U.S. at 90-91 (enforcing arbitration agreement despite the risk of unbearable arbitration costs because the record "contain[ed] hardly any information on the matter" and the risk was therefore "too speculative to justify the invalidation of an arbitration agreement").

## CONCLUSION

For the reasons stated, we AFFIRM the judgment of the district court.