**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| SOLIGENIX, INC., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) C.A. No. 2022-0880-PAF |
| | ) |
| EMERGENT PRODUCT DEVELOPMENT | ) |
| GAITHERSBURG, INC., and EMERGENT | ) |
| MANUFACTURING OPERATIONS | ) |
| BALTIMORE LLC, | ) |
| | ) |
| Respondents. | ) |

**OPINION**

Date Submitted: November 29, 2022
Date Decided: February 21, 2023

Richard L. Renck, Mackenzie M. Wrobel, Coleen W. Hill, DUANE MORRIS LLP, Wilmington, Delaware; Frederick R. Ball, DUANE MORRIS LLP, Boston, Massachusetts; Patrick C. Gallagher, DUANE MORRIS LLP, Boca Raton, Florida, *Attorneys for Petitioner.*

Jon E. Abramczyk, Ryan D. Stottman, Grant Michl, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Jake Goodelman, John Dougherty, Thomas Wintner, Katherine Galle, MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND POMPEO, P.C., Boston, Massachusetts, *Attorneys for Respondents.*

**FIORAVANTI, Vice Chancellor**

This opinion resolves the respondents' motion under Court of Chancery Rule 5.1 for continued confidential treatment (the "Motion"). The Motion seeks confidential treatment of portions of the petitioner's Verified Petition to Vacate Arbitration Award (the "Petition") and certain exhibits attached thereto (the "Exhibits" and each an "Exhibit").

## I. BACKGROUND

This action arises out of an arbitration proceeding between petitioner Soligenix, Inc. ("Soligenix") and respondents Emergent Product Development Gaithersburg, Inc. ("EPDG") and Emergent Manufacturing Operations Baltimore LLC ("EMOB," and collectively with EPDG, "Emergent"). Soligenix initiated the arbitration to resolve its claims against Emergent for breach of contract and fraudulent inducement, which arose from a subcontract between Soligenix and Emergent. The parties conducted the arbitration before the American Arbitration Association. During the arbitration, the parties stipulated to a protective order governing the proceeding, including the production of documents.[1]

On July 6, 2022, a panel of arbitrators (the "Panel") issued its award (the "Award") in favor of Emergent. On September 30, 2022, Soligenix filed its Petition

---

[1] The Stipulated Protective Order is attached as Exhibit C to the Motion.

and 11 Exhibits as confidential filings pursuant to Court of Chancery Rule 5.1.[2] Thereafter, Soligenix filed a public version of the Petition, which contained redactions proposed by Emergent. The redactions were substantial. None of the Exhibits were filed publicly, even though they included an article from *The New York Times*[3] and a publicly available transcript of a Congressional Subcommittee hearing.[4]

Soligenix sent a letter to Emergent objecting to the redactions and maintaining that the Exhibits should have been filed publicly. Emergent then agreed to narrow its redactions to the Petition and to make several of the Exhibits available on the public docket. Soligenix was not satisfied with Emergent's revised public filings and filed a Notice of Challenge to the continued confidential treatment of the redacted portions of the Petition and Exhibits A through E.[5] Emergent responded with this Motion.[6]

---

[2] The Federal Arbitration Act and the Court of Chancery Rules govern this proceeding by default because the parties did not provide for the Delaware Uniform Arbitration Act ("DUAA") to apply. *See* 10 *Del. C.* § 5702(c). ("Unless an arbitration agreement complies with the standard [providing] . . . for the applicability of the [DUAA], any application . . . to vacate or enforce an arbitrator's award shall be decided . . . in conformity with the Federal Arbitration Act . . . . [S]uch cases . . . shall be adjudicated in accordance with the Court of Chancery's Rules of Procedure.").

[3] Dkt. 1 Ex. F.

[4] *Id.* Ex. G.

[5] Dkt. 13.

[6] Dkt. 21.

Exhibit A is the subcontract between Soligenix and Emergent that was the subject of the arbitration. Exhibits B and C are Quality Agreements between Soligenix and Emergent, which were exhibits in the arbitration. Exhibit D is the Award, and Exhibit E is a report reflecting Emergent's responses to a Soligenix audit of Emergent's quality systems. Exhibits A, B, C, and E were designated as confidential in the arbitration pursuant to the Stipulated Protective Order.[7] Emergent notes that Soligenix itself, despite its objections in this action, designated Exhibits A and E as confidential in the arbitration. Except for the Award, Emergent possessed all of these five challenged documents prior to the commencement of the arbitration.

Emergent's Motion rests on three propositions: (1) arbitration is inherently confidential; (2) the Stipulated Protective Order governing the arbitration proceeding requires confidential treatment of the information that Emergent seeks to shield from public view; and (3) the information qualifies as confidential information under the Court of Chancery Rules.

---

[7] With one small exception, none of the terms of Exhibits A through E indicate that they are confidential or contain confidential information. That exception is found in Exhibit A, which consists of several documents. One of them—Emergent's 2015 response to a Soligenix request for proposal—contains a legend at the bottom of each page indicating that it is confidential. Soligenix, not Emergent, designated this information as confidential in the arbitration.

## II.    ANALYSIS

This dispute highlights the tension between the public policy that judicial proceedings are open to the public and the general expectation of privacy between litigants that chose alternative dispute resolution.  The former is not open to debate.  The Delaware Constitution of 1897 provides that "all courts shall be open."  Del. Const. Art. I, § 9.  "Open litigation is the default in the Court of Chancery.  Confidentiality is the exception, and not the rule."  *GKC Strategic Value Master Fund, LP v. Baker Hughes Inc.*, 2019 WL 2592574, at *5 (Del. Ch. June 25, 2019) (citations omitted).  The extent of the expectation of confidentiality in arbitral proceedings, however, is not so clear.

### A.    Arbitration Is Not Inherently Confidential.

Arbitration is inherently a private process of adjudicating disputes outside the public setting of a courtroom.  But "private" does not equate with "confidential."  *See Laudig v. Int'l Bus. Machs. Corp.*, 2022 WL 18232706, at *5 n.5 (N.D. Ga. Dec. 16, 2022) ("[C]onfidentiality is not an inherent aspect of arbitration . . . ."); Amy J. Schmitz, *Untangling the Privacy Paradox in Arbitration*, 54 U. Kan. L. Rev. 1211, 1211 (2006) (hereinafter "Schmitz, *Untangling*") ("Arbitration is private but not confidential."); Mitch Zamoff, *Safeguarding Confidential Arbitration Awards in Uncontested Confirmation Actions*, 59 Am. Bus. L.J. 505, 514–15 (2022) (hereinafter "Zamoff, *Safeguarding*") ("Contrary to the mistaken assumptions of

many (even lawyers) that arbitrations are confidential by their very nature, the reality is that absent an agreement among the parties, there are no laws (at least in the United States) that require the parties to keep arbitration decisions confidential.") (footnote omitted); Bert K. Robinson, *Arbitration: The Quest for Confidentiality*, 58 La. B.J. 180, 181 (2010) (dispelling the mistaken assumption of "most legal professionals" that "arbitration, *ipso facto*, has some confidentiality attached to it").[8]

Nothing in the FAA requires confidentiality. *See* 9 U.S.C. §§ 1–16; *Laudig*, 2022 WL 18232706, at *5 n.5 ("[N]othing in the FAA requires confidentiality."). Nor do the commonly used arbitration rules. *See* Schmitz, *Untangling*, at 1219 ("The commonly used American Arbitration Association (AAA) Commercial Arbitration Rules and Mediation Procedures for example, do not address confidentiality of general arbitration proceedings."); *Statement of Ethical Principles*, Am. Arb. Ass'n (hereinafter "AAA Statement") ("The parties always have a right to

---

[8] As one scholar described the distinction:

> The privacy of the proceeding refers to the ability of uninvited third parties—such as former spouses, business partners, and the media—to access and observe the proceedings, and perhaps disclose those observations, without the consent of the disputing parties, and possibly the arbitrator. The confidentiality of the proceeding, however, refers to the ability of the disputing parties, the arbitrator, witnesses, and others who attended the arbitration to disclose publicly oral statements made in arbitration, documents tendered in arbitration, or observations of conduct by parties, witnesses, and arbitrators during the course of the arbitration.

Richard C. Reuben, *Confidentiality in Arbitration: Beyond the Myth*, 54 U. Kan. L. Rev. 1255, 1260 (2006).

disclose details of the proceeding, unless they have a separate confidentiality agreement."); *id.* ("[I]ndividual arbitrations are confidential *if the parties so determine*") (emphasis added); *Galleon Syndicate Corp. v. Pan Atl. Gp.*, 637 N.Y.S.2d 104, 105 (N.Y. App. Div. 1996) ("There is no confidentiality privilege precluding disclosure of the material requested as the parties to the arbitration proceeding governed by the Rules of the American Arbitration Association are, in the absence of a confidentiality provision, not prohibited from disclosing documents generated or exchanged during the arbitration and since evidentiary material at an arbitration proceeding is not immune from disclosure."); *Lyons v. NBCUniversal Media, LLC*, 2019 WL 6703396, at \*12 (C.D. Cal. Sept. 27, 2019) (observing that the operative confidentiality provision in the JAMS Rules "requires the Arbitrator to maintain the confidential nature of the Arbitration, not Plaintiffs"); *Brown v. DIRECTV, LLC*, 2013 WL 3273811, at \*10 (C.D. Cal. June 26, 2013) ("JAMS Rule 26 . . . only requires confidentiality on the part of the arbitrator and JAMS, not the parties themselves.").[9]  Thus, if parties to an arbitration desire confidentiality, they

---

[9] As previewed in the parentheticals above, the AAA Rules and the JAMS Rules do impose confidentiality obligations on the arbitrator.  *See* AAA Statement ("AAA staff and AAA neutrals have an ethical obligation to keep information confidential."); JAMS Comprehensive Arbitration Rules & Procedures 26(a) ("JAMS and the Arbitrator shall maintain the confidential nature of the Arbitration proceeding and the Award, including the Hearing, except as necessary in connection with a judicial challenge to or enforcement of an award, or unless otherwise required by law or judicial decision.").  Those confidentiality obligations do not extend to the parties, nor could they bind a court.

7

must do so by contract.  But even then, as discussed below, once the parties bring their dispute to court, their agreement does not control these proceedings.

Emergent quotes various state and federal decisions for the broad proposition that arbitration is confidential.  Mot. ¶¶ 16–17, 24.  A careful review of those cases reveals otherwise.  For example, Emergent relies on the quotation from *Guyden v. Aetna, Inc.*, 544 F.3d 376, 385 (2d Cir. 2008), that "confidentiality is a paradigmatic aspect of arbitration."  Mot. ¶ 17.  *Guyden* did not cast a cloak of inherent confidentiality over arbitration proceedings.  *Guyden* involved a challenge to an arbitration agreement that expressly provided for confidentiality of the proceedings; it did not hold that arbitration proceedings are inherently confidential.

*Barkley v. Pizza Hut of America, Inc.*, 2016 WL 409611 (M.D. Fla. Feb. 3, 2016) (ORDER), is also inapposite.  In *Barkley*, the parties presented an unopposed motion to approve a settlement and for leave to file documents under seal (including some relating to arbitration) or, alternatively, to file redacted versions.  The court rejected the application to seal the entire filing, observing that the court "may not rubber stamp a stipulation to seal the record."  *Id.* at *1 (internal quotation and citation omitted).  The court did, however, permit a redacted filing.  In doing so, the court stated:  "Courts generally keep arbitration proceedings and awards confidential, particularly because:  (1) parties often enter into them to maintain confidentiality; and (2) confidentiality promotes the voluntary execution of private

8

arbitration agreements, which courts consider a sound public policy objective." *Id.* To support this seemingly broad proposition, the *Barkley* decision cited three cases, none of which supports an arbitration exception to the fundamental precept that court proceedings are open.

The first cited case, *Century Indemnity Co. v. Certain Underwriters at Lloyd's, London*, 592 F. Supp. 2d 825 (E.D. Pa. 2009), was an application to confirm an arbitration award, accompanied by an uncontested motion to seal the award. The parties to the arbitration expressly agreed to keep all arbitration information confidential, including the final award, and that all submissions of arbitration information to a court would be sealed, subject to court approval. *Id.* at 826. In that circumstance, and after applying a multi-part test developed by the Third Circuit, the court agreed to seal the arbitration filings in the confirmation proceeding. The second cited case, *Nationwide Mutual Insurance Co. v. Westchester Fire Insurance Co.*, 2009 WL 275561 (W.D. Wis. Feb. 4, 2009), was also an uncontested application to seal an arbitration award in a confirmation proceeding "in an effort to comply with a confidentiality order entered by the [arbitration] panel." *Id.* at *1. In the third case, *ITT Industries, Inc. v. Rayonier, Inc.*, 2005 WL 1744988 (S.D.N.Y. July 20, 2005), the court observed, in a footnote, that it had previously signed an uncontested order sealing the arbitration award. *Id.* at *2 n.4. In each of these cases the application to seal was uncontested. As such, they are not persuasive in

9

circumstances where, as here, an award is contested and the court is required to adjudicate the dispute.[10]

Emergent's reliance on cases from this court and the Superior Court fare no better. These decisions cannot carry the burden that Emergent asks them to bear. In *Schwaber v. Margalit*, C.A. No. 2021-1038-LWW (Del. Ch. July 13, 2022) (ORDER), the court granted a motion to stay the action in favor of a prior-filed arbitration proceeding. That same day, the court granted the defendants' motion for continued confidential treatment during the pendency of the arbitration. The court observed that requiring public disclosure while the arbitration was ongoing "would deprive the defendants of the bargained for privacy of arbitration in accordance with the mandatory arbitration provisions that apply." *Id.* The court made clear, however, that the plaintiff could renew his challenge to confidential treatment if the stay were later lifted. *Id.* *Schwarber* did not suggest that all arbitration materials are confidential. Rather, the court essentially deferred consideration of a party's challenge to confidential treatment until after the conclusion of the arbitration. This court took a similar approach in *SCLiquor, LLC v. D'Usse LLC*, C.A. No. 2022-0931-PAF (Del. Ch. Dec. 22, 2022) (ORDER), observing that "it is appropriate to

---

[10] Professor Zamoff makes the case for honoring the arbitral parties' agreement to maintain the confidentiality of an arbitral award in very limited circumstances. He suggests a rule that would "deny [motions to seal] when the losing party challenges the underlying award and grant the motions when the award is uncontested." Zamoff, *Safeguarding* at 505.

10

deny the challenge to continued confidential treatment pending final resolution of the arbitration proceedings." *Id.*; *cf. Early v. Trend Cap. Mgmt. LP*, C.A. No. 2019-0064-KSJM (Del. Ch. Oct. 8, 2020) (Minute Order) (denying a request to seal the entire record and requiring compliance with Rule 5.1 after dismissing the action in favor of arbitration).[11]

Emergent argues that "'Delaware public policy favors arbitration, and confidentiality is vital to that process.'" Mot. ¶ 3 (quoting *Legent Gp., LLC, v. Axos Fin., Inc.,* 2021 WL 4593775, at *3 (Del. Ch. Oct. 6, 2021)). *Legent* did not establish that all arbitrations are inherently confidential. Mot. ¶ 3. Nor did the case involve a Rule 5.1 challenge. The decision focused on a discovery dispute in which plaintiffs sought to enforce a subpoena to obtain information relating to a Financial Industry Regulatory Authority ("FINRA") arbitration proceeding. The requested information was subject to a protective order that had been entered in the arbitration. In resolving the motions, the court emphasized that "the mere fact that the FINRA Arbitration materials are confidential does not immunize them from discovery." *Id.* at *3. The court ultimately denied the motion to enforce the subpoena and granted the motion to quash without prejudice. Similarly, *Continental Casualty Co. v. BorgWarner*,

---

[11] Notably, these cases involved challenges to confidential treatment filed by a *party* to the litigation and the arbitration proceeding. Nothing said here should be interpreted as suggesting the result would or should be the same if a Rule 5.1 challenge had been made by a non-party to the arbitration agreement, such as a member of the news media.

11

2016 WL 1169107 (Del. Super. Mar. 15, 2016), involved motions to compel and to quash a subpoena for arbitration materials that were governed by a confidentiality agreement. *Id.* at *3. The case did not involve a Rule 5.1 challenge, and it did not establish that arbitration itself is inherently confidential.

Thus, Emergent cannot justify its Motion for continued confidential treatment based on the notion that all arbitration is inherently confidential.

## B. The Parties May Not Prevent Public Access by Private Contract.

Emergent contends that continued confidential treatment is warranted because the information Emergent seeks to keep from the public is confidential under the terms of the Stipulated Protective Order entered in the arbitration proceeding. Mot. ¶¶ 6–7. This argument has been repeatedly rejected. "[A] confidentiality provision, even when carefully negotiated, cannot form the basis for this Court to treat contractual provisions as confidential under Rule 5.1, assuming that the Rule itself does not provide such a basis." *Al Jazeera Am., LLC v. AT & T Servs., Inc.,* 2013 WL 5614284, at *3 (Del. Ch. Oct. 14, 2013); *see Polychain Cap. LP v. Pantera Venture Fund II LP*, 2021 WL 5910079, at *5 (Del. Ch. Dec. 10, 2021) (ORDER) ("[P]arties cannot subvert Rule 5.1 by contract."); *Kronenberg v. Katz,* 872 A.2d

12

568, 608 (Del. Ch. 2004) (observing the risk to the public's right of access if courts were to permit sealing of filings based on confidentiality clauses).[12]

Emergent's reliance on the Stipulated Protective Order fails in the first instance because that order does not require confidential treatment of the Exhibits, even though they were stamped as CONFIDENTIAL in the arbitration. Mot. ¶¶ 24–25. Exhibits A, B, C, and E were in Soligenix's possession prior to the commencement of the arbitration and, therefore, were not within the definition of Confidential Information under the Stipulated Protective Order. *See* Mot. Ex. C ¶ 3(e) ("Information is not Confidential if it . . . was known to the Recipient . . . before the Producer produced it."). As to the two Exhibits that Soligenix stamped as confidential in the arbitration (Exhibits A and E), the Stipulated Protective Order

---

[12] Federal courts applying the FAA have reached the same result. *See, e.g., Lohnn v. Int'l Bus. Machs. Corp.*, 2022 WL 36420, at *13 (S.D.N.Y. Jan. 4, 2022) ("It is black-letter law . . . that the fact that information exchanged between private parties is subject to a confidentiality agreement that binds them is not itself sufficient to deprive the public of the right of access to that information when it is properly filed in support of a motion asking the Court to take dispositive judicial action on a matter properly before that Court."); *Dentons US LLP v. Zhang*, 2021 WL 2187289, at *1 (S.D.N.Y. May 28, 2021) ("Here, Petitioner contends that sealing is appropriate because the parties agreed to file under seal any papers associated with an arbitration proceeding. Confidentiality agreements alone are not an adequate basis for sealing, however."); *Jankula v. Carnival Corp.*, 2019 WL 8051719, at *2 (S.D. Fla. Sept. 5, 2019) ("While parties may contract to engage in confidential arbitration proceedings, when they ask the Court to rule on the validity of those proceedings, they choose a forum to which the public presumptively has a right of access.") (internal quotation omitted); *Century Indem. Co. v. AXA Belg.*, 2012 WL 4354816, at *14 (S.D.N.Y. Sept. 24, 2012) ("[W]hile parties to an arbitration are generally permitted to keep their private undertakings from the prying eyes of others, the circumstance changes when a party seeks to enforce in . . . court the fruits of their private agreement to arbitrate., *i.e.*, the arbitration award.") (internal quotation omitted).

13

permits a producer of confidential information to withdraw the designation. *Id.* ¶ 4(e); *see also id.* ¶ 5(k) ("Nothing herein shall affect the right of the Producer to disclose as it deems appropriate information the Producer has designated as Confidential."). In any event, the Stipulated Protective Order does not prohibit Soligenix from raising a confidentiality challenge in this proceeding. *Id.* ¶ 6(b) ("A Party's failure to contest a designation of information as Confidential is not an admission that the information was properly designated as such.").

There is also a strong argument that the Award itself is not confidential under the terms of the Stipulated Protective Order. Emergent tries to shoehorn the Award within the scope of the Stipulated Protective Order, which states that it applies "to all aspects of [the] arbitration proceeding including any evidentiary hearing." Mot. ¶ 27 (quoting Stip. Prot. Ord. ¶ 2(d)). The Stipulated Protective Order, however, does not specifically designate the Award as confidential. If the parties wanted to make the Award confidential, they could have expressly done so. *See*, *e.g.*, *Amerisure Mut. Ins. Co. v. Everest Reinsurance Co.*, 2014 WL 5481107, at *1 (E.D. Mich. Oct. 29, 2014) (discussing an arbitration agreement which stated that the "final award and any interim decisions, correspondence, oral discussions and information exchanged in connection with the proceedings will be kept confidential"); *Century Indem. Co. v. AXA Belg.*, 2012 WL 4354816, at *12 (S.D.N.Y. Sept. 24, 2012) (noting that the arbitration agreement provided for "all

briefs, depositions, and hearing transcripts generated in the course of [the] arbitration" as well as the "final award and any interim decisions" to be confidential).

The court need not decide whether the Award is confidential under the terms of the Stipulated Protective Order. Even if it were, this court is not bound by that agreement. Where, as here, the court is asked to decide a challenge to an arbitration award, the proceeding is public and any party seeking to keep any portion of the record confidential must comply with Rule 5.1. *See In re Boeing Co. Deriv. Litig.*, 2021 WL 392851, at *3 (Del. Ch. Feb. 1, 2021) ("After the parties' substantive dispute is laid before the Court, confidentiality is no longer simply a matter to be negotiated between the stockholder and the Company; it must yield to this Court's duty to conduct its proceedings with the highest possible degree of public access."); *see also Istithmar World PJSC v. Amato*, 2013 WL 66478, at *2 (S.D.N.Y. Jan. 7, 2013) ("The Court concludes that it need not decide whether the confidentiality stipulation covers the Award, because the Court is not a party to the stipulation and is not bound to it."); *CAA Sports LLC v. Dogra*, 2018 WL 6696622, at *1 (E.D. Mo. Dec. 20, 2018) ("It is a stretch to say the requirement of confidentiality for the arbitration also extends to a review of that arbitration by a court of law. There are no clear indications that it should so extend; for example, the agreement does not say '. . . judgment may be entered upon the award by any court, *which shall also be confidential*.'") (emphasis in original).

## C. The Requirements of Rule 5.1.

To maintain continued confidential treatment, Emergent must satisfy Court of Chancery Rule 5.1. Rule 5.1 embodies the fundamental principle that "proceedings in a civil action are a matter of public record." Ct. Ch. R. 5.1(a). The "proceedings" include "[a]ll pleadings and other materials of any sort, including . . . exhibits." *Id.* The rule recognizes certain exceptions to the fundamental principle that all court proceedings and filings are public. Those exceptions are narrow. "[M]ost information *presented to the Court* should be made available to the public." *Sequoia Presidential Yacht Gp. LLC v. FE P'rs LLC*, 2013 WL 3724946, at *2 (Del. Ch. July 15, 2013).

To obtain confidential treatment of a filing, a party must obtain an order of this court "specifying the information or categories of information for which good cause exists for Confidential Treatment." Ct. Ch. R. 5.1(b)(1). Under Rule 5.1, "good cause" exists "only if the public interest in access to Court proceedings is outweighed by the harm that public disclosure of sensitive, non-public information would cause." *Id.* at (b)(2). "The public interest is especially strong where the information is material to understanding the nature of the dispute." *Boeing*, 2021 WL 392851, at *2 (internal quotations omitted). The party seeking confidential treatment "always bears the burden of establishing good cause for Confidential Treatment." Ct. Ch. R. 5.1(b)(3).

16

Rule 5.1 identifies specific categories of information that may qualify as Confidential Information:

> trade secrets; sensitive proprietary information; sensitive financial, business, or personnel information; sensitive personal information such as medical records; and personally identifying information such as social security numbers, financial account numbers, and the names of minor children.

Ct. Ch. R. 5.1(b)(2).

Information is not entitled to confidential treatment merely because it is not publicly available. *See* Ct. Ch. R. 5.1(b)(2). The non-public information must be "sensitive" and the party must identify the specific information worthy of confidential treatment. *Kronenberg v. Katz,* 872 A.2d 568, 608–09 (Del. Ch. 2004). The movant must also proffer "tangible evidence of concrete damage" if that information is made accessible to the public. *Id.* at 609. Generic statements of harm are insufficient; "the harm must be particularized." *Manhattan Telecomms. Corp. v Granite Telecomms., LLC,* 2020 WL 6799122, at *6 (Del. Ch. Nov. 19, 2020) (internal quotations omitted); *accord Boeing,* 2021 WL 392851, at *2. "Moreover, that the information for which a party seeks confidential treatment may be embarrassing or previously undisclosed does not alone warrant confidential treatment." *Sequoia*, 2013 WL 3724946, at *2.

Emergent has not attempted to establish good cause under Rule 5.1. Emergent merely points to the Stipulated Protective Order as controlling. Mot. ¶ 27 ("Thus,

17

the Final Award is protected from disclosure by the Protective Order."). Emergent does not assert that disclosure of the Petition, the Award, or Exhibits A, B, C, or E would cause *any* harm to Emergent, let alone offer tangible evidence of concrete damage or particularized harm that would befall Emergent if the Motion for continued confidential treatment were denied.

## III. CONCLUSION

Emergent has not satisfied its burden to support continued confidential treatment of the Petition or the Exhibits. Accordingly, the Motion for continued confidential treatment is DENIED.