22-2764
Aaron Katzel v. American International Group, Inc.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of June, two thousand twenty-four.

PRESENT:
> DENNIS JACOBS
> BARRINGTON D. PARKER
> MYRNA PÉREZ,
> *Circuit Judges.*

---

Aaron Katzel,

> *Plaintiff-Appellant*,

> v.                                   No. 22-2764

American International Group, Inc.,

> *Defendant-Appellee*,

Peter Solmssen, Lucy Fato,

> *Defendants*.

1

FOR PLAINTIFF-APPELLANT:    DANIEL WOOFTER (Neal Brickman, The Law Offices of Neal Brickman, P.C., New York, NY, *on the brief*), Goldstein, Russel & Woofter, LLC, Washington, D.C.

FOR DEFENDANT-APPELLEE:    ANTONIO PEREZ-MARQUES (Gina Cora, *on the brief*), Davis Polk & Wardwell LLP, New York, NY.

Appeal from an order and judgment of the United States District Court for the Southern District of New York (Hellerstein, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order and judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Aaron Katzel appeals from the district court's November 28, 2022 order and judgment granting summary judgment to his former employer, Defendant-Appellee American International Group, Inc. ("AIG"). Katzel sued AIG for purported violations of the whistleblower protection provisions of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745 (2002) ("Sarbanes-Oxley") and New York state law. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## BACKGROUND

Katzel was hired at AIG in 2006 after a ten-year career practicing securities law. He worked at AIG in a variety of legal roles until his termination on May 4, 2017. For the final six years of his time at AIG, Katzel was head of the Legal Operations Center (the "LOC"), a division within AIG tasked with reducing the company's external legal costs. The LOC's

"customers" were other departments within AIG. During his time as head of the LOC, Katzel reported directly to AIG's General Counsel.

In 2015, Katzel approached AIG management with a proposal to spin the LOC off into its own consulting firm, which would continue to work with AIG while also contracting with other companies to help them reduce their external legal costs. Katzel suggested that he be made the new president and CEO of this independent LOC. Although AIG was initially interested in the proposal, the company later decided in 2016, after further evaluation, not to move forward with the LOC spin-off proposal. AIG's General Counsel Peter Solmssen testified that he thought the spin-off idea "was a bad idea" based on his experience with other companies, and that he "heard unanimously from [his new colleagues] that the LOC was not providing good services internally. . . . [s]o it struck [him] as inconceivable that one could make a successful sale of the company whose only customer hates it." J. App'x at 265–66.

The events that Katzel now alleges constitute his whistleblower complaint began in December 2016, when Katzel asked to speak with AIG's Compliance Department. During a series of conversations with members of the Compliance Department's investigations team, Katzel expressed concerns about AIG's evaluation of the proposed LOC spin-off, including that AIG's policy for pursuing strategic transactions had gaps that prevented the company from maximizing shareholder value, that AIG's internal controls about record preservation were inadequate, and that AIG's enforcement of sensitive information policies was inadequate. A number of Katzel's concerns related to a potential conflict of interest by Accenture, a consulting firm involved in the process of evaluating the viability of the potential LOC spin-off.

After this conversation, Katzel responded to the Compliance Department's annual Fraud and Corruption Risk Questionnaire, asserting that while he did not have any knowledge of

3

alleged or suspected fraud, he still thought it would be worthwhile to "evaluate the advisability of review and testing on the robustness of conflict of interest protections in the processes followed by certain functions responsible for significant transactions at the company" to ensure the company made decisions that "maximize shareholder value." J. App'x at 648. The Compliance Department eventually concluded that while Katzel had raised valid concerns about AIG's practices of sharing confidential documents with consulting firms, there was no actual conflict of interest issue.

A few months after the Compliance Department wrapped up its investigation, on May 4, 2017, Katzel was fired. Katzel was terminated for being unwilling and unable to make changes that Solmssen viewed as necessary at the LOC, including cutting its costs and reducing its headcount.

Katzel properly initiated this litigation pursuant to Sarbanes-Oxley by filing a whistleblower complaint with the Occupational Safety and Health Administration ("OSHA") on October 27, 2017. *See* 18 U.S.C. § 1514A(b)(1)(A). In September 2020, Katzel exercised his statutory right under Sarbanes-Oxley pursuant to 18 U.S.C. § 1514A(b)(1)(B) to file the claim in federal district court. After discovery, the district court granted summary judgment to AIG on Katzel's Sarbanes-Oxley claims and declined to exercise supplemental jurisdiction over Katzel's related state law claims. AIG filed a motion to amend that order, and in November 2022, the district court issued an amended order granting summary judgment to AIG on all claims. Katzel now appeals that November 2022 amended order and judgment.

## STANDARD OF REVIEW

We review "the district court's decision to grant summary judgment *de novo*, resolving all ambiguities and drawing all permissible factual inferences in favor of" the non-moving party,

4

which in this case is Katzel. *Ziparo v. CSX Transp., Inc.*, 15 F.4th 153, 158 (2d Cir. 2021) (citation omitted). Reversal is warranted when the district court decides "to weigh the evidence and determine the truth of the matter," instead of determining "whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citation omitted).

## DISCUSSION

Katzel's claims on appeal can be divided into three categories: his primary Sarbanes-Oxley claim that he was terminated for reporting a violation of Securities and Exchange Commission ("SEC") rules or regulations; a secondary "post-termination" Sarbanes-Oxley claim that AIG revoked his access to certain equity compensation he had earned while at AIG in retaliation for his OSHA complaint; and a series of state law contract claims. We affirm the district court's dismissal of all claims.

### I. Katzel's Retaliatory Termination Sarbanes-Oxley Claim

We affirm the district court's holding on Katzel's retaliatory termination claim because we agree that a reasonable jury could not conclude that Katzel reasonably believed he was reporting a violation of SEC rules or regulations. While Katzel proffered facts that suggest he legitimately believed AIG was making a poor business decision in declining to proceed with his proposed LOC spin-off, these facts do not suggest he believed this bad business decision reached the level of illegal conduct.

Sarbanes-Oxley "prohibits publicly traded companies from retaliating against employees who report what they reasonably believe to be instances of criminal fraud or securities law violations." *Murray v. UBS Sec., LLC*, 601 U.S. 23, 27 (2024). Specifically, the Sarbanes-Oxley whistleblower retaliation provision establishes that covered employers such as AIG may not "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an

employee in the terms and conditions of employment because of" protected whistleblower activity. 18 U.S.C. § 1514A(a).

To state a claim under the Sarbanes-Oxley whistleblower provision, a whistleblower must demonstrate that "(1) she engaged in protected activity; (2) the employer knew that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Bechtel v. Admin. Rev. Bd., U.S. Dep't of Lab.*, 710 F.3d 443, 447 (2d Cir. 2013) (citation omitted). Once a plaintiff establishes these elements, a defendant may "rebut this *prima facie* case with clear and convincing evidence that it would have taken the same unfavorable personnel action in the absence of the protected behavior." *Id.* at 451 (citations omitted).

Regarding the first requirement, a whistleblower plaintiff bears the initial burden of demonstrating that he or she "reported conduct that he or she reasonably believe[d] constituted a violation of federal law." *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 221 (2d Cir. 2014) (citation omitted). This standard is not so demanding as to require whistleblowers to demonstrate that their communications related "definitively and specifically" to an existing violation of a particular statute or SEC rule. *Id.* Rather, Sarbanes-Oxley merely requires that whistleblowers have a subjective belief that they are reporting illegal conduct, and that the subjective belief be objectively reasonable. *See Guyden v. Aetna, Inc.*, 544 F.3d 376, 384 (2d Cir. 2008).

Katzel fails to clear this relatively low bar. The notes from Katzel's initial conversation with the Compliance Department, as well as two separate certifications he signed in 2016, suggest that he did not believe the conduct he was reporting violated federal law. During Katzel's initial conversation with the Compliance Department, he stated that he had "[c]oncerns/questions about whether the process was fair & robust," that he thought the team reviewing the spin-off proposal

6

did not "let[] facts speak for themselves," and that he thought a "vigorous process need[ed] to be in place" for potential transactions like the spin-off to ensure AIG got the "right price" and the "right buyers." J. App'x at 685. Absent from the conversation notes, however, is any suggestion that Katzel thought this failure to conduct a "vigorous process" was fraudulent in any way. *Id.*

The fact that Katzel submitted two certifications in 2016 attesting that he had no violations of law or regulations to report—a Code of Conduct Certification on November 28, 2016 and a Risk Assessment Questionnaire on December 1, 2016—further supports the finding that Katzel did not subjectively believe he was reporting illegal activity. *See, e.g.*, *Kantin v. Metro. Life Ins. Co.*, 696 F. App'x 527, 529 (2d Cir. 2017) (holding that a whistleblower plaintiff failed to demonstrate a subjective belief that a transaction violated a federal law or regulation, despite a belief that it "might be considered unethical," where the plaintiff "admitted that he himself did not believe the [transaction] was illegal" (internal quotation marks omitted)). Nothing in the record before the district court suggests that Katzel believed the conduct he reported constituted a violation of federal law.

## II. Katzel's Post-Termination Retaliation Claim

We affirm the district court's holding on Katzel's post-termination retaliation claim because the undisputed facts in this record establish that the filing of the OSHA complaint could not have been a "contributing factor" to the revocation of his unvested AIG equity shares.

Katzel alleges that AIG retaliated against him because of his OSHA complaint by instructing non-party UBS to cut off his access to an account holding his unvested AIG shares. Beginning in 2013, Katzel was eligible to receive AIG stock as part of the company's equity compensation program, the Long-Term Incentive Plan (the "LTIP").[1] The LTIP provided that

---

[1] Katzel technically received shares through two separate incentive plans: the 2013 Long-Term Incentive

7

terminated employees must "execute a release" to "receiv[e] delivery" of any equity compensation scheduled to vest after their termination. J. App'x at 772. Per the terms of the LTIP, he was required to sign the release within 90 days of his termination in May 2017. *See id.* It is undisputed that Katzel did not sign the release, and thus forfeited any ownership of his unvested shares once the 90-day period lapsed in August 2017.

Katzel has not satisfied his "initial burden of showing that his protected activity was a contributing factor" in his termination. *Murray*, 601 U.S. at 26 (internal quotation marks and citation omitted). Katzel did not file his OSHA complaint, which he alleges is the relevant protected activity, until October 2017, two months after he lost all rights to the unvested shares as a result of his failure to sign the release agreement.[2]

It may well be true that, as Katzel contends, AIG did not instruct UBS to enter a "zero" into Katzel's equity account until after the OSHA complaint was filed; however, Katzel had already lost any legal right to the unvested shares months before. The OSHA complaint thus cannot have been a "contributing factor" to a revocation of rights that had already been effective for two months.

### III. Katzel's State Law Claims

In addition to his Sarbanes-Oxley whistleblower retaliation claims, Katzel pleaded a number of claims under New York state contract law related to his equity accounts. For

---

Plan, which governed shares issued between 2013 and 2016, and the 2017 Long-Term Incentive Plan, which governed shares issued in 2017. The two plans were governed by substantially similar contracts, so we refer to them collectively as the "LTIP."

[2] In contrast to raising concerns regarding AIG's handling of the spin-off, filing an OSHA complaint is much more clearly a "protected activity" under Sarbanes-Oxley. *See*, *e.g.*, *In re McClendon v. Hewlett Packard, Inc.*, 2006 WL 6577175, at *76 (Dep't of Lab. Oct. 5, 2006) ("[T]he filing of a whistleblower complaint is a SOX protected activity.").

substantially the same reasons articulated by the district court, we affirm the holding granting summary judgment to AIG on the state law claims.

*     *     *

We have considered Katzel's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the order and judgment of the district court granting summary judgment to AIG on all claims.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court